# 22-3054

## In the
## United States Court of Appeals
### For the Second Circuit



DANIEL HALLER and LONG ISLAND SURGICAL PLLC,

*Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
200 INDEPENDENCE AVENUE SW, WASHINGTON, DC 20201,

*Defendants-Appellees,*

*(See inside cover for continuation of caption)*
ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP)

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

THE WILDER LAW FIRM
*Attorneys for Plaintiffs Appellants*
301 West 57th Street, 19b
New York, New York 10019
(212) 951-0042
nick@wilder.law

_____

XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH
AND HUMAN SERVICES, 200 INDEPENDENCE AVENUE SW, WASHINGTON,
DC 20201, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, KIRAN
AHUJA, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE U.S. OFFICE OF
PERSONNEL MANAGEMENT, 1900 E STREET NW WASHINGTON, DC 20415,
UNITED STATES DEPARTMENT OF LABOR, 200 CONSTITUTION AVENUE NW
WASHINGTON, DC 20210, JULIE SU, IN HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF LABOR, 200 CONSTITUTION AVENUE NW WASHINGTON,
DC 20210, UNITED STATES DEPARTMENT OF THE TREASURY, 1500
PENNYSLVANIA AVENUE NW, WASHINGTON DC 20220 and JANET YELLEN,
IN HER OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY,
1500 PENNSYLVANIA AVENUE NW WASHINGTON, DC 20220,

*Defendants-Appellees.*

_____

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**..................................................................................iii

**INTRODUCTION**……………...............................................................1

**ARGUMENT**……………..................................................................4

**I.**     The No Surprises Act…………...........................................................4

           A. Balance Billing… ……………………………………………….… 4

           B. The IDR Is Destructive In Addition To Being Unconstitutional…....5

**II.**   Appellees Flatly Incorrectly State The *Claims* on Appeal are
        New; They are not, Pursuant to United States Supreme Court and
        Second Circuit Jurisprudence when a *Claim* is Well-Preserved
        and Presented, New *Arguments* May Issue In Support of an
        Existing Claim and Are Not "Forfeited"…………………………………..7

           A. The Law.......................................................…10

           B. Appellees Pine that the District Court had no Chance
            to Address the "New" Arguments: In Fact the District Court
            Did Expound at Length on the Exact "New Argument"
            Argued on Appeal ........................................…16

           C. The Lower Court Specifically Addressed The
             Argument of Physicians' Suing Insurers……...............................17

           D.  The IDR Is Mandatory……...........................................…19


**III**   Arguments fromThe Brief on Appeal  Demonstrate the
         District Court was in Error Concerning suing Insurance Companies……..20

**IV**   Erroneous Statements by Counsel at the District Level Are
         Correctable and Corrected……………………………………….…...24

**V**   The Unjust Enrichment Claim for Violation of Article III
and the Seventh Amendment is an At Law Claim………..……………..25

    A.    Unjust Enrichment, A Money Judgement, is a
Legal Remedy………..……………………………………………..26

    B.    In New York Unjust Enrichment and Quantum
Meruit Are One  Cause of Action- For a Legal Remedy………….28

    C.    Quantum Meruit Claims are Clearly At Law- Thus
Unjust Enrichment  Claims, their counterparts, As Set
Forth Above, are At Law………………………………………....29

    D.    The NSA Violates Article III of the United
States Constitution……………………………………..………....30

**VI**    Balance Billing Patients………..………………………………………...31

**VII**    The Takings Clause..………..……………………..…………………….33

**CONCLUSION**……………………………………………………………...34

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

*AA Medical, PC v. Centene Corporation*, No. 21-CV-5363 (JS)(ST)
(E.D.N.Y. June 30, 2023)……………………………………………20, 21,28

*Aniero Concrete Co., Inc. v. New York City Constr. Auth.*, 2000 WL 863208,
*10 (S.D.N.Y. June 27, 2000)………………………………………..…28

*Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*,
159 F.Supp. 3d 324, 337 (E.D.N.Y. 2016)……………….…………….…28

*Athletes and Artists, Inc. v. Millen*, 1999 WL 587883, *8 n.16
(S.D.N.Y. Aug. 4, 1999)……………………………………………………..30

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
    430 U.S. 442, 455 (1977)……………………….………………..……17

*Bogle-Assegai v. Connecticut*, 470 F.3d 498, ? (2nd Circuit 2006)……………..14

*Becker v. Poling Transp. Corp.*,
    356 F. 3d 381 (2nd Circuit 2004)………………………………..…26

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573, 586 (2d Cir. 2006)……..…………………………….…22

*Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*,
    167 A.D.3d 461, 462 (1st Dep't 2018)……………….…………..….…18, 24

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687,
710, 723 (1999)…..……………………………………………………29-30

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
    70 N.Y.2d 382, 388-89 (1987)……………………………………....22

*Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.A.R.L.*, 790 F.3d 411,
422 (2nd Cir. 2015)……..………………………………………………14

*Dairy Queen, Inc. v. Wood*, 369 US 469, 476 (1962)…………………………..27

*Dayton Superior Corp. v. Marjam Supply Co., Inc.*, 2011 WL 710450, *19 (E.D.N.Y. Feb. 22, 2011)………………………………………………………….30

*Design Strategies, Inc. v. Davis*, NO 02 Civ 5329 (VM) (S.D.N.Y., 2005)……28

*Dewey v. Des Moines,* 173 US 193 (1899)…………………………………………..11

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*,
   2021 WL 4437166, (S.D.N.Y. Sept. 28, 2021)……………………..…...23

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp. Inc.*,
   20-cv-9183 (JGK) (SDNY, April 4, 2023)……………………………..24-25

*Everytown For Gun Safety v. Bureau of Alcohol,* 984 F.3d 30 (2nd Cir. 2020)    12

*Executive Benefits Ins. Agency v. Arkison*, 573 US 25 (2014)……………..……..31

*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989)………………………17, 31

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 US 204, 210 (US 2002)…..27

*Hankins v. Lyght,*
   441 F. 3d 96 (2d Cir.2006)………………………..…………………….….25

*Harris Trust and Sav. Bank v. Salomon Smith Barney Inc.,* 530 US 238,
 FN2 (2000)……………………………………………………………….…..11

*Illinois v. Gates,* 462 US 213, 221 (1983)………………………………………..12

*International Technologies Marketing, Inc. v. Verint Systems, Ltd.*,
 (S.D.N.Y. 2016)………………..……………………………………………29

*Josephson v. Oxford Health Insurance, Inc.*,
   2012 NY Slip Op 32112 (Sup Ct., Nassau Cty., 2012)………..…...........22

*Josephson v. Oxford Health Ins., Inc.*,
   2014 NY Slip Op 34001 (Sup Ct., Nassau Cty., 2014)……………..……...22

*Kashef v. BNP Paribas Sa*, 925 F.3d 53, 62 (2nd Circuit 2019)…………..……14-15

*Lee Pharmaceuticals v. Mischler*, 526 F.2d 1115, 1117 (2d Cir. 1975)…………..28

*Magi XXI, Inc. v. Stato Della Citta del Vaticano*, 714 F.3d 714
(2nd Cir. 2013).........................................................................................14-15

*Mertens v. Hewitt Assoc.*, 508 US 248, 255 (US 1993)…………………………..27

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine
Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)  …………...………………………29

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
        458 U.S. 50, ? (1982)……………….…………………………………17, 32

*N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc.,*
        937 N.Y.S. 2d 540 (Sup. Ct. NY Cty. 2011)??…………………………21, 23

*Operating Local 649 Annuity v. Smith Barney Fund*,
        595 F. 3d 86, 91 (2nd Cir. 2010)……………………………………………3

*Re Air Cargo Shipping Services Antitrust*, 697 F3d 154 (2nd Cir. 2012)…………13

*Sniado v. Bank Austria AG*, 378 f.3d 210   ?   (2nd Cir.  ?)…...…………………..13

*Stern v. Marshall*,
        564 US 462, 484 (2011)………………………………………………17, 32-33

*Thomas v. Union Carbide Agricultural Products Co.*,
        473 US 568, 586 (1985)……………….…………………………………..17

*Unicorn Crowdfunding, Inc. v. New Street Enterprise, Inc.*, 507 F. Supp.3d 547,
577 n.22 (S.D.N.Y. 2020)…………………………………………………..…..30

*Yee v. City of Escondido,*503 U.S. 519, 534 (1992)…………………………1, 10-14

*Vinifera Imports Ltd. V. Societa Agricola Castello Romitoria Srl*,
(E.D.N.Y. 2020)…………………………………………………………………..29

*Vintero Corp. v. Corporacion Venezolano de Fomento,* 675 F.2d 513, 515
(2d Cir. 1982)………………………………………………………………13


**UNITED STATES CONSTITUTION**                          **PAGE**

U.S. Const. Article III…………………………………………………1-35

U.S. Const. **Amend. VII**……….…………………… 1,2,7,15-17, 20, 23, 25-30

U.S. Const. **Amend. V**……………..………………………….…………10


**FEDERAL STATUTES**                                    **PAGE**

Federal Rules of Civil Procedure,  §12(b)(6)…………………………..3, 23, 33,34

Consolidated Appropriations Act of 2021
 "No Surprises Act" (Pub. L. 116-260) . …….………………………………...1, 11

8 U.S.C §1331……………………………………………………….…...7

28 U.S.C. §1291………………………………………………...………..8

*Ibid* at §111(c) ………………….……………………………………...1, 11

*Ibid* at §(c)(1)(B). ……………………….……………………………….2

*Ibid* at §(c)(5)(C)(i)(I)…. …….……………………………………3, 12, 23,24

*Ibid* at §(a)(3)(E)(i) . …….…………………………………………..3,12,22

*Ibid* at §(c)(5)(C)(ii) . …….……………………………………………..3

*Ibid* at §(c)(5)(D) . …….…………………………………………...…3

*Ibid* at §131-132. …….……………………………………..….…..…3, 11

*Ibid* at §(c)(1)(B) . …………………………………………………………..12

*Ibid* at §111(c)(5)(C)(i)(I)……………………………………………….…..12

*Ibid* at §131(a) …….…………………………………………...1,5,11,22

*Ibid* at §132(a) …….…………………………………………11,5,11,22

*Ibid* at §(c)(1)(A) …….…………………………………………...21

*Ibid* at §(c)(1)(B) …….…………………………………………...21

*Ibid* at §(c)(5)(B) …….…………………………………………...22

*Ibid* at §(C)(ii) …….…………………………………………...22

*Ibid* at §(c)(2), (5) …….……………… ………………………....22

*Ibid* at §(c)(5)(C)(i)(I) …….……… …………………………………22

*Ibid* at §(a)(3)(E)(i) …….……………… .………………………………22

*Ibid* at §(c)(5)(C)(i)(I)…….…………………………………………22

*Ibid* at §(c)(5)(C)(i, (ii) …….…………………………………...23

*Ibid* at §(c)(5)(D)…….…………………………………………...23

*Ibid* at §(c)(5)(E)(i)(II) …….…………………………………...23

*Ibid* at §(c)(5)(C)(i)(I) …….…………………………………...23

*Ibid* at §(a)(3)(E)(i). …….…………………………………...23

## <u>INTRODUCTION</u>

Appellees' reply brief is a struggle ("A.Br."). The first half is mostly a summary of the No Surprises Act ("NSA") text and alleged purpose. Appellees' primary focus is on Appellants' argument in the brief (Br.) that the NSA is unconstitutional because it violates Article III and the Seventh Amendment, by, inter alia, extracting providers' common law claim of providers to sue insurers, and placing them in the NSA's new Independent Dispute Resolution Entity ("IDR").

Appellant's argument is unassailable, as the gravamen of the District Court's Decision and Order, on this claim, is that where Congress creates a new "public right" it may circumvent Article III. Joint Appendix ("JA") 56. However, when a right is a common law right, or "private right", that right must be heard in an Article III court, with a jury if desired. *Id.* And See *eg. Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), 82-83; *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989) at 36.

The District Court erroneously found there is no common law of providers to sue insurers, which is as a matter of fact and law, incorrect. A robust body of common law provides exactly for providers to sue insurers. And thus, her Decision and Order collapses. *Id.*

1

Appellees answer to this is to repeat *ad nauseam* that it is a "novel" claim, and therefore "forfeited." A.Br. 14,15,25. It isn't. The United Stas Supreme Court's holding in *Yee v. City of Escondido,* 503 U.S. 519 (1992) is authoritative The Court held "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Id* at 534*.* At the District Court the **claim** was that the NSA violated Article III and the Seventh Amendment. See Plaintiffs' March 31 2022 memorandum of law at JA 103-107. The primary argument in support was that the NSA stripped the private common law right of providers to sue patients, and funneled it into the Independent Dispute Resolution board.  On appeal, appellants' added the argument that the NSA stripped the providers' common law right to sue insurers, and dumped it into the Article-II created IDR. The claim is the same. There is only an added argument to the existing claim, which is a matter of law only, requires no new fact-finding, and is perfectly appropriate- and compelling.

Despite Appellees' phantom complaints about the District Court's lack of opportunity to address this argument, the District Court in fact did extensively discuss the argument and issues concerning providers suing insurers, but erroneously found there was no common law. JA 56-61. This is woefully incorrect. Upon this, and other errors, she dismissed the case, and denied appellants' motion for injunctive relief and granted appellees' motion to dismiss.

Unjust enrichment usually has an underlying claim for money, a classic legal claim. New York treats unjust enrichment and quantum meruit as the same claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005), and quantum meruit being a well-established legal remedy. See *Athletes and Artists, Inc. v. Millen*, 1999 WL 587883, *8 n.16 (S.D.N.Y. Aug. 4, 1999).

No matter, "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the laws of the United States . U.S. CONST. art. 3, § 2, cl. 1 (emphasis added). Appellants' common law claims certainly are guaranteed access to Article III Courts, and deprivation of such access is unconstitutional.

It is key to bear in mind, the entire case was dismissed **only on a motion to dismiss** pursuant to Rule 12(b)(6). The District Court's Decision and Order concerning this claim was clearly in error. The United States Court of Appeals reviews a dismissal of a complaint pursuant to Rule 12(b)(6) *de novo.* "The court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Operating Local 649 Annuity v. Smith Barney Fund*, 595 F. 3d 86, 91 (2nd Cir. 2010). The District Court's Decision and Order grant the Appellees' drastic remedy of dismissing pursuant to Rule 12(b) was

clearly erroneous. Appellees reply has no answer to that, other than it's a "novel" argument.

Injunctive relief is a more demanding standard, but it should have been granted here, particularly provided that the District Court was analyzing the common law right of a provider to sue an insurer, which abundant common law dictates cannot be stripped from Article III, Seventh Amendment access. The likelihood of success on this argument on this claim is patent; the hardships tip in Appellants favor who can no longer absorb the "cost-shifting", which is driving doctors out of business, damaging the public as well; and for the same reasons are suffering irreparable damage. Moreover, all Constitutional violations constitute irreparable harm.

## ARGUMENT

### I.

### <u>The No Surprises Act</u>

The Court having reviewed Appellants' brief is familiar with the general contours of the No Surprises Act. In very brief sum, the issues bear repeating.

**A. Balance Billing**

The first part of the Act, prohibiting "balance billing", sounds like a cheerful solution to our ills; but it is not. 42 U.S.C. § 300gg-111, § 300gg-131-132.

Providers almost never sue patients. Period. "There is a deep body of well-established common law which permits 'balance billing' and filing suit against a patients, **although physicians rarely if ever actually sue patients**." Br. 6 (emphasis added). The utility of "balance billing" is to put pressure on these enormous insurance companies to pay providers more reasonable rates for in-network services. Let insurance companies pay their fair share.

### B.      The IDR Is Destructive In Addition To Being Unconstitutional

The Act provides that the physician's fee will be determined under the IDR by the Qualifying Payment Amount, 42 U.S.C. § 300-gg-111(c)(5)(C)(i), which it defines as "the median of the contracted rates recognized by the plan or issuer," § 300gg- 111(a)(3)(E)(i). The QPA is a mess. It often includes various different procedures or types of physicians under the same code, so that surgeons, for example, are coded for payment with primary care physicians. Insurers are allowed to treat every in-network contract the same in the calculation, regardless of how many times that contract rate was used. Insurers including "ghost rates" in the calculation artificially lowering the QPA amount.

In the text of the NSA, **the QPA is the first factor to be considered**. This means the insurers' calculations are given primacy in arbitration. Other factors are only secondary. Moreover, the Act expressly prohibits the IDR from considering

the "usual and customary rates" for services provided by the physician or the amount she would have billed had the federal law not existed (*i.e.*, under common law). 42 U.S.C. § 300gg-111(c)(5)(D).

Only considered, secondarily, are "Additional considerations" such as the medical providers' experience, training, success rate, and other factors. *Id.* § 300gg-111(c)(5)(C)(ii). However, under no circumstances may the IDR consider the medical providers' "usual and customary rate" and what the providers' would have charged in the absence of the Act. *Id.* § 300gg-111(c)(5)(D). The IDR process itself is thus heavily weighted in favor of insurers.

The open purpose of the Act is to engage in "cost-shifting" from insurers and the public to medical care providers, providing a windfall for insurers. Appellees demonize "greedy" doctors and extol the Goliath insurers which is inverted. The result is that medical practices are not, and should not be reasonably expected to, shoulder such unyielding burden, and collapse. Fewer emergency surgeons, anesthesiologists, radiologists, pathologist, and other doctors stay in practice and are available. This does not accomplish the public policy goal of improving affordable medical care to the public. Indeed, the consequence is quite the contrary.

## II

**Appellees Flatly Incorrectly State The *Claims* on Appeal are New; They are not, Pursuant to United States Supreme Court and Second Circuit Jurisprudence when a *Claim* is Well-Preserved and Presented, New *Arguments* May Issue In Support of an Existing Claim and Are Not "Forfeited"**

The primary thrust of the Appellees' opposition brief is that Appellants have advanced "novel claims" regarding the NSA's violations of Article III and the seventh amendment, not raised and adjudicated below and therefore "forfeited". This is easily demonstratabley false. Nothing exhibits the misfire of Appellees' argument more persuasively than the lower Court's Order itself, which discussed the purported "novel claims" at length. JA56-61.

The Appellees complain that the appellate brief adds a new argument about the common law right of medical providers to sue insurers for unjust enrichment (rather than only suing patients in quantum meruit) under Article III, a right which cannot be divested by Congressional whim and tossed into a new-fangled arbitration panel, the IDR. See eg. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), 82-83; *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989) at 36.Appellees claim this is an entirely new claim, in no way, raised below, therefore forfeited on appeal. It isn't.

While counsel for Appellants at the District Court focused on the argument that the NSA violates the Seventh Amendment by abrogating the common law

7

right of medical providers to sue patients, under Article III, (for "balanced bills")
the appeal makes the same Article III, Seventh Amendment argument, but re-
focuses on denial of the right of providers to sue insurers for unjust enrichment.
For present purposes, the claims are identical: The claims are for violations of
Article III, violations of the Seventh Amendment; the fundamental Constitutional
law is the same, the arguments are essentially the same, all that is new is the
specific argument concerning suing insurance companies for unjust enrichment, as
further argument for the same Constitutional claim. **JA 103-107** and Br.

The claim comes down to "private rights" v. "public rights", and when
Congress may- and may not- assign claims to Congressionally-created arbitration
bodies. The bedrock precept undergirding all the relevant Constitutional law, is
that when Congress creates a new right, never before in existence, "a public right",
it is free to assign it to whatever adjudication panel it wants. *Atlas Roofing Co. v.
Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 461 (1977).

However, when Congress issues legislation which extracts established
common law, "private rights", Congress may <u>not</u> bypass and encroach upon Article
III Courts and the Seventh Amendment, and dump the common law into new-
fangled adjudication panels, such as the IDR. *Id* at 484. The NSA requiring all
claims by providers against insurers to be extracted from the common law and
placed in an Article II arbitration is such an unconstitutional law.

8

These are the **claims** on appeal. Focusing on suits against insurance companies for unjust enrichment, does not alter the claim on appeal: the NSA violates Article III and the seventh amendment. Nor does it alter the fundamental argument: "public rights v. private rights", and that when Congress creates a new public right, it is free to assign what adjudication depot it wishes; but when existing common law private rights are at issue, Congress may not dump them in a Congressionally-crafted adjudication body, and completely divest recourse to Seventh Amendment rights in Article III. The argument that common law quantum meruit claims against patients, and the argument that that common law claims against insurers are both simply arguments supporting the **claim** that the NSA violated the providers' Article III, Seventh Amendment rights.

Appellees appear very tremulous concerning the "new argument". They state: "This Court need not reach the merits of this argument because it has been squarely forfeited." A.Br. 20. They claim"[Appellants]now present the entirely new argument that the Act violates the Seventh Amendment by interfering with supposedly pre-existing rights of out-of-network providers to obtain compensation from insurers (not just patients). But this novel argument is plainly forfeited, so the Court need not decide in the first instance whether plaintiffs' newly articulated position is correct." *Id* at 14. Appellees want the Court to stay far away from this

argument; but the argument is no way, shape, or form forfeited as established by the caselaw below.

## A. The Law

The United Stas Supreme Court's holding in *Yee v. City of Escondido,* 503 U.S. 519, 534 (1992) is instructive, authoritative, and compelling. The Court held "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Id* at 534.

In *Yee*, petitioners claimed that respondents had effected a taking in violation of the Fifth and Fourteenth Amendments. Respondents complained that in the court's below petitioners had raised the constitutional claim only by arguing a *physical* taking, whereas on appeal they argued the Constitutional violation was a *regulatory* taking. The Court held:

> Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims.* They are, rather, separate *arguments* in support of a single claim—**that the ordinance effects an unconstitutional taking.** Having raised a taking claim in the state courts, therefore, petitioners **could have formulated any argument they liked in support of that claim here**. … violation of the Fifth Amendment's Takings Clause, is thus properly before us.

> *Id* at 535 (emphasis added).

10

This presents the identical issue here. At the District Court, Plaintiffs-Appellants maintained, inter alia, that the NSA violated their article III ,Seventh Amendment rights, by effectively morphing the compensation option of "balancing billing" patients, under quantum meruit, into general participation in the unfair IDR panels with insurance companies.  Appellants have not abandoned that argument; however, on appeal the strong additional argument supporting **the claim** of violation of Article III and the Seventh Amendment is the argument that the NSA effectively forecloses Appellants from suing recalcitrant insurance companies for unjust enrichment in courts. As mandated in *Yee*, having presented and preserved the Article III Seventh Amendment claim, Plaintiffs-Appellants **can formulate any <u>argument</u> they like in support of that claim on appeal.** *Yee* at 535.

See also *Harris Trust and Sav. Bank v. Salomon Smith Barney Inc*., 530 US 238, FN2 (2000).("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below" quoting *Yee* at 534. See also  *Dewey v. Des Moines,* 173 US 193 (1899)("Parties are not confined here to the same arguments which were advanced in the courts below upon a Federal question there discussed"); *Illinois v. Gates,* 462 US 213, 221 (1983)(same). The Supreme Court's decisions are binding.

This Court of Appeals for the Second Circuit has repeatedly, specifically reinforced the Supreme Court's rule in *Yee v. City of Escondido,* 503 U.S. 519, 534 (1992). In *Everytown For Gun Safety V. Bureau Of Alcohol*, 984 F. 3d 30 (2nd Cir.2020), this Court held "Once a federal claim is properly presented," however, "a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Id* at FN 4 (citing *Yee*). The Court continued:

> We have explained that the rule in *Yee* does not require but permits us to consider a party's additional arguments "for a proposition presented below." [citations omitted]. Exercising that discretion is proper here for two reasons. First, the ATF's additional argument 'presents a question of law and there is no need for additional fact-finding'. [citations omitted]. Second, the ATF's argument asks us to consider the import of a statute passed by Congress…**Refusing to do so would amount to ignoring applicable law.**
>
> *Id* (emphasis added).

These principles apply precisely to the instant case. First, the argument presents a question of law and there is no need for additional fact-finding. Second the argument addresses the critical importance of a federal statute passed by Congress overhauling payment for medical care nationwide. Declining to do so can permit continuation of the very evisceration of Article III Courts, and of our tripartite system of governance.

12

*See also Sniado v. Bank Austria AG*, 378 F.3d 210, 213(2ⁿᵈ Cir)(granting "new argument" holding "We have exercised this discretion where the argument presents a question of law and there is no need for additional fact-finding."); *Vintero Corp. v. Corporacion Venezolano de Fomento,* 675 F.2d 513, 515 (2d Cir.1982)(permitting new argument for **<u>unjust enrichment</u>** holding "[a]rguments made on appeal need not be identical to those made below…").

See also *In Re Air Cargo Shipping Services Antitrust*, 697 F3d 154 (2ⁿᵈ cir. 2012,) FN 3("Plaintiffs argue that we should disregard defendants' reliance on the IATCA (Federal Statute)because those arguments were not raised below. **There is no new argument; the IATCA is additional support for Defendants' position.** 'Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.'", citing *Yee.*)

In addition to following *Yee v. City of Escondido,* 503 U.S. 519 (1992), the Second Circuit has slightly modified the analysis at times. While virginally brand new arguments completely untethered to claims raised below are ordinarily not heard; the Courts have the discretion to consider argument not precisely raised below, or "waived" but "***<u>should</u> exercise this discretion where the argument presents a question of law and there is no need for additional fact-finding".** Id* at 534 (emphasis added).

See *Kashef v. BNP Paribas Sa,* 925 F. 3d 53, 62 (2nd Circuit 2019)

(emphasis added)(exercising its discretion to consider the "new" argument). Again,

in the instant case, the question concerning the common law right of a physician to

sue insurers, a "private right", which the NSA may not deprive of Article III

Seventh amendment rights, is only a question of law and there is no need for

additional fact-finding, and therefore should be heard. In *Eastman Kodak*

*Company v. STWB, INC.,* 452 F. 3d 215 (2nd Cir.2006**),** this Court held

> We note that Bayer objects to Coyne's present reliance on the regulation,
> as Coyne failed to raise it before the district court ..But appeals courts
> may entertain additional support that a party provides for a proposition
> presented below. *Citing Yee v. City of Escondido* ("Once a federal claim
> is properly presented, a party can make any argument in support of that
> claim; parties are not limited to the precise arguments they made
> below."). … Accordingly, we consider it appropriate to take cognizance
> of the regulation in deciding this appeal.
>
> *Id* at 221.

See also *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.,* 790

F.3d 411, 422 (2d Cir. 2015)("we may in any event exercise our discretion to

consider an issue raised for the first time on appeal 'where the argument presents a

question of law and there is no need for additional fact-finding,' [citations omitted]

we decline to conclude that Cortlandt has forfeited its rights.")

As discussed above, the appeal presents no "new claim". "Once a federal

claim is properly presented, a party can make any argument in support of that

claim; parties are not limited to the precise arguments they made below."

However even applying the somewhat narrower analysis by some Second Circuit decisions, the additional argument "should" be considered. *Kashef v. BNP Paribas Sa,* 925 F. 3d 53, 62 (2nd Circuit 2019) . <u>Simply, the issues are only questions of law and there is no need for additional fact-finding</u>.

The issue is whether a federal statute is violative of Appellants' Article III and Seventh Amendment rights. <u>A pure question of statutory interpretation and Constitutional law</u>. The "new" argument is that medical providers have a well-established common law right of unjust enrichment against recalcitrant insurers, as a matter of law, foreclosing Congress from divesting access to Article III Courts and the Seventh Amendment, and dumping them in an arbitration panel, which to this day is not functioning. It's plainly a question of law and involves no additional fact finding.

Concerning the question of why the new argument was not raised below. There are three answers. First, there are several arguments which support this claim. Second the firm of Abrahms Fensterman was representing Plaintiffs, then. <u>Third, and most importantly, the Decision and Order below squarely addressed this argument for six pages, and so "raising it" is irrelevant, the District Court, squarely addressed it.</u> JA 56-61. This appeal is from that Order.

**B. Appellees Pine that the District Court had no Chance to Address the "New" Arguments:  In Fact the District Did Expound at Length on the Exact "New Argument" Argued on Appeal**

Appellees argue: "Reaching the merits of plaintiffs' reformulated Seventh Amendment claim could also require the Court to resolve several issues that were not briefed below and that the district court <u>has had no chance to address</u>." A.Br.19. Appellees claim "Indeed, this case is a particularly poor candidate in which to excuse plaintiffs' forfeiture." This is a rather desperate claim. No greater example could be presented to show when to permit a "new argument" than when the Court issued squarely addressed the "new argument" in her Decision and Order. JA 56-61.  And incidentally, the issues are legal only with no need for new fact-finding.

The Decision and Order below squarely addressed the Seventh Amendment Claim, the Claim of Congressional statutes circumventing Article III courts, and in **particular the argument of providers suing insurers**.  We appeal orders not memoranda of law.

First as to the general principle of public rights versus private rights and common law, which applies to any common law claim. The Court stated:

> The parties appear to agree that the question here is whether Congress created a new public right when it enacted the No Surprises Act. The plaintiffs assert that Congress did not. …[Appellants] maintain that "Congress has no

authority to deny [] the physician the right to a jury trial *de novo* on state common law claims," ..

JA57.

The Court cited multiple Supreme Court case which actually emphasize that where a common law right to a claim exists, there is no new "public right" and Congress cannot violate the Seventh Amendment and Article III, by dumping such claim into Congressional arbitration panels. See citations to *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 455 (1977); *Stern v. Marshall*, 564 U.S. 462, 484 (2011); *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 586 (1985); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 1989)). JA56.


### C. The Lower Court Specifically Addressed The Argument of Physician's Suing Insurers.

The District Court held "**Out-of-network providers' claims against insurers do not arise under state common law, but instead depend 'upon the will of [C]ongress'**" JA-59 (emphasis added). The District Court specifically stated that "When Congress enacted the No Surprises Act, it permitted health care providers to recover payment directly from insurers for out-of-network services,

which is a new public right." JA-59. This veers far off the mark. See Br. 27-37, setting for the well-established common law right of providers to sue insurers.

The district Court continued "Indeed, a provider's right to recover payment directly from an insurer is 'completely dependent upon' the adjudication of a claim created by the Act." JA-59.

The District Court held: "the IDR entity mediates between doctors and insurers, and determines what the out-of-network providers can get from insurers." JA-57. **She states** of *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, 167 A.D.3d 461, 462 (1st Dep't 2018), ("dismissing providers' suit against an insurer because the New York Emergency Services and Surprise Bills Act . . . does not provide for a private right of action to enforce its provisions"). Thus, the Act does not compel providers to arbitrate state common law claims to which they had a right to a jury trial." JA-58 (emphasis added).. Her analysis of the two *Buffalo* cases was wrong as discussed in the brief at 32-37 (including federal cases disussing why she is wrong).   But the point is the Decision and Order squarely addressed the issue (erroneously).

The District Court further held: "[i]**n cases where the federal law applies, it is the No Surprises Act itself that creates [an out-of-network] health care provider's right to recover payments directly from a health plan or insurer** (and the corresponding legal obligation of the health plan or insurer to pay a

18

provider with whom that plan had no contractual relationship)." JA-59 (emphasis added).

It could not be more pellucidly clear that the District Court did in fact squarely address the argument that providers have a common law right sue insurers directly (and thus cannot be removed from Article III adjudication and the right to a jury as the NSA does). Even though new *arguments* would be no barrier, the issues of providers suing insurers is in no way "new",  but addressed at length by the District Court, erroneously. The Decision and Order is precisely that from which Appellant is supposed to, and does, appeal. Appellees' attempt is without merit.

### D.     The IDR Is Mandatory

Appellees raise a frivolous red herring. They note that the Provider (Amicus Br.4 ) claims participation in the IDR is not mandatory, and claim its an issue,  **yet, Appellees agree it is mandatory.** Appellees state: **"To be clear, the Departments do not endorse the Provider Amici's reading of the Act.** See A.Br. at 25 (emphasis added). **Appellants position is that it is mandatory**. Appellees agree it is mandatory. So why raise the issue? Perhaps a lack of other issues?

Previously the Appellees stated: "The fact that the dispute centered between two private parties did not remove it from the framework of public rights, which Congress could **properly assign to mandatory arbitration** for adjudication." A.Br. at 25.  *See* Defendants' opposition to plaintiff's motion and further support or motion to dismiss, 4-26-22  ("ECF 30"). Both parties agree the IDR is mandatory. Pondering hypothetical positions held be neither party does not advance the case.

### III

### Arguments from The Brief on Appeal  Demonstrate the District Court was in Error Concerning suing Insurance Companies

Again, contrary to the District Court's claim that "Out-of-network providers' claims against insurers do not arise under state common law, but instead depend 'upon the will of [C]ongress," JA-59. There is an abundance of case law reflecting such claims do arise under state common law, and the reasoning used by the Decision and Order below to deny the Article III Seventh Amendment claim collapses.

Appellees try to minimize the strong caselaw, unsuccessfully. In fact, just six weeks ago in the New York Federal Court decision, *AA Medical, PC v. Centene Corporation*, No. 21-CV-5363 (JS) (ST) (EDNY, June 30, 2023), again affirmed

20

the common law right of medical providers to bring unjust enrichment/quantum meruit claims against insurers. In *AA Medical*, the EDNY held "While it is true that the immediate beneficiaries of the medical services were the patients, and not [the insurer], that company *did* receive the benefit of having its obligations to its plan members . . . discharged". *Id.* Thus, the Court denied the insurers motion to dismiss, holding "Plaintiff has sufficiently pled a claim of unjust enrichment as to patients DA and RS as [the insurer] received the benefit of having its obligation to those patients discharged". *Id.*

See also *N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc.,* 937 N.Y.S. 2d 540 (Sup. Ct. NY Cty. 2011)(Anil Singh, J.S.C, now on the Appellate Division, First Department). The Court held: "where, as here, a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees.") *Id* at 527.

And again in *Josephson v. Oxford Health Insurance, Inc.*, 2012 NY Slip Op 32112 (Sup Ct., Nassau Cty., 2012); *Josephson v. Oxford Health Insurance, Inc.*, 2012 NY Slip Op 32112 (Sup Ct., Nassau Cty., 2012), the New York Supreme Court held, regardless of any statutes: "to prevent injustice, an out-of-network provider who has not been paid at reasonable and customary rates may maintain an action for unjust enrichment" against the insurer. *Id.* In the same case, *Josephson v.*

21

*Oxford Health Ins., Inc.* 2014 NY Slip Op 34001 (Sup Ct., Nassau Cty., 2014), the

Court later denied defendant insurer's motion for summary judgment against the

medical care providers, similarly holding, "defendants' motion for summary

judgment dismissing plaintiffs' claim for unjust enrichment is denied." *Id.*

    In *Beth Israel Med. Ctr.,* this Court held "'The theory of unjust enrichment

lies as a quasi-contract claim. It is an obligation the law creates *in the absence of*

*any agreement.'" Id* at 587(emphasis in original). This Court further held:

> A 'quasi contract'" is not really a contract at all, but rather a legal
> obligation imposed in order to prevent a party's unjust enrichment. . .
> Briefly stated, a quasi-contractual obligation is one imposed by
> law ***where there has been no agreement or expression of assent, by***
> ***word or act, on the part of either party involved. . . .***

*Id* at 587 (emphasis in original),(recognizing unjust enrichment but denying

claim as there was an express contract), quoting *Clark-Fitzpatrick, Inc. v. Long*

*Island R.R. Co.,* 70 N.Y.2d 382, 388-89 (1987).

    In *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 2021 WL

4437166, (S.D.N.Y. Sept. 28, 2021)(Allison J. Nathan, United States District

Judge)("where, as here, a hospital is required by law to treat patients in an

emergency room, an insurance company is unjustly enriched if it fails to pay the

hospital in full for the costs incurred in rendering the necessary treatment to the

insurer's enrollees." *Id* at *11, citing Wellcare,* 937 N.Y.S.2d at 545. Appellant is

primarily and emergency room doctor.

Thus there is a well-established body of common law providing for out-of-network providers to file claims in Article III Courts against recalcitrant insurers. The District Court's holding that the Act's IDR process providing a forum for medical care providers to seek compensation from insurers is a "public right", because there was no common law right of medical providers to sue insurers in Article III Courts, and therefore no violation of the Seventh Amendment, is simply incorrect. Hence the District Court's reasoning for granting a motion to dismiss pursuant to 12(b)(6) collapses, as does her reasoning for denying Appellants' motion for injunctive relief.

The sole case the District Court cited to support its sweeping conclusion that there is no common law right of a medical provider to pursue claim against an insurer in an Article III Court is *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, 167 A.D.3d 461, 462 (1st Dep't 2018). The District Court's analysis of Buffalo is that it "dismiss[ed] providers' suit against an insurer because 'the New York Emergency Services and Surprise Bills Act . . . does not provide for a private right of action to enforce its provisions'". JA-48.

*Buffalo* only holds that New York's No Surprises Act provides no **private right of action to enforce the Act. However *Buffalo* says nothing prohibiting common law claims in general.**

23

The record is set straight by the District Court for the Southern District of New York in *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp. Inc.,* 20-cv-9183 (JGK) (SDNY, April 4, 2023)(John G. Koeltl, United States District Judge)(Herein "Emergency Physician Servs. of N.Y. II") held;

> In short, the Buffalo Emergency Cases do not support the defendants' position that New York law … preclude[s] or bar[s] emergency medicine providers from us[ing] common law unjust enrichment claims to seek reimbursements from insurers for the "reasonable value" of emergency medical services . . . rendered to members of [the insurer's] employer-sponsored health benefit plans.
>
> *Id* at 31 (internal citations omitted).

Thus the unjust enrichment is indeed a common law claim under New York law, and the District Court's Order was in error.

## IV
## Erroneous Statements by Counsel at the District Level Are Correctable and Corrected

The Appellees note that counsel for plaintiffs in District Court erroneously stated that providers had no common law claims against insurers. As demonstrated above there is a wealth of common law claims against insurers (here applying unjust enrichment).

Appellants and the Court are not bound by such errors. See *Hankins v. Lyght,* 441 F. 3d 96 (2d Cir.2006)("Appellees' position that the RFRA does not

apply to suits between private parties is not determinative of our analysis, given that they have vigorously pursued and preserved the substance of the issue. <u>We are required to interpret federal statutes as they are written</u> — in this case the ADEA as amended by the RFRA — <u>and we are not bound by parties' stipulations of law</u>." *Id* at 104-105 (emphasis added). See also *Becker v. Poling Transp. Corp.,* 356 F. 3d 381 (2nd Circuit 2004)("whether Metro's liability to appellees is vicarious or direct based on the answer to Question 4 is a matter of law, and we are not bound by stipulations of law". *Id* at 390).

V

**The Unjust Enrichment Claim for Violation of Article III and the Seventh Amendment is an At Law Claim**

Appellants cite to the well-established common law right of unjust enrichment by providers against insurers, demonstrating that the NSA did not create a "new public right", and could not foreclose Appellants access to Article III, Seventh Amendment rights. Appellees tries to reply by questioning (without answering) whether such a claim is legal or equitable.

25

**A. Unjust Enrichment, A Money Judgement, is a Legal Remedy**

The essential defining characteristic of a legal remedy is an action for money. Appellants justly seek money from the insurers to pay for the providers' tireless services caring for their patients/insured. According to the United States Supreme Court "[m]oney damages are, of course, the classic form of *legal* relief." *Mertens v. Hewitt Assoc.*, 508 US 248,255 (US 1993)(emphasis in original). See also *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 US 204, 210 (US 2002)(emphasis in original)("[m]oney damages are, of course, the classic form of *legal* relief." ), quoting *Mertens, supra,* at 255.

According to the United States Supreme Court "suits seeking (*whether by judgment, injunction, or declaration*) to compel the defendant to pay a sum of money to the plaintiff are suits for `money damages,' as that phrase has traditionally been applied". *Id* (emphasis added). And thus *legal*.

"The complaint request[ing] a money judgment…presents a claim which is unquestionably legal." *Dairy Queen, Inc. v. Wood*, 369 US 469, 476. (1962). "A claim for a money judgment is a claim wholly legal in its nature however the complaint is construed." *Id* at 477 (granting petitioner's request for their Seventh amendment right to jury).

When viewing whether a case is equitable and or legal the Court must err on the side of permitting a jury trial. "In conducting this inquiry, the Court must

resolve any doubts in favor of the right to a jury trial" *Lee Pharmaceuticals v. Mishler,* 526 F.2d 1115, 1117 (2d Cir. 1975).

In *Design Strategies, Inc. v. Davis,* NO 02 Civ 5329 (VM) (S.D.N.Y, 2005), the S.D.N.Y. held "The Court will next consider whether Design's causes of action for unfair competition and unjust enrichment should be construed as equitable or legal in this case. "As asserted in this case, the Court concludes that, even though they are construed as equitable in some circumstances resolving all doubts in favor of Design, they may be viewed as derivative of an underlying **legal obligation** in this case." (emphasis added).

In *Design Strategies, Inc.,* even where the claim was breach of fiduciary duty, the underlying issue was recovery of money, and therefore was deemed unjust enrichment. The court held:

> Courts within the Second Circuit …in determining whether an action is legal or equitable for Seventh Amendment purposes… look … for underlying legal claims. Pursuant to the principle that, in the Seventh Amendment analysis, all doubts must be resolved in favor of the party seeking a jury trial.. that a breach of fiduciary duty claim may be construed as legal if it is predicated on an underlying legal theory of liability and, as remedy, seeks monetary damages to compensate plaintiff"

*Id.*

**B.     In New York Unjust Enrichment and Quantum Meruit Are One Cause of Action- <u>For a Legal Remedy</u>**

Justice Sotomayor held in *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005),   "Applying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." 175 (citations omitted). She went to state  "Quantum meruit and unjust enrichment are not separate causes of action," and that "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning as much as he deserves,' is one measure of liability" *Id* (citations omitted).

See also *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC,* 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016) ("Quantum meruit and unjust enrichment are not separate causes of action' and are therefore analyzed under the same principles."); *Vinifera Imports Ltd. v. Societa Agricola Castello Romitorio Srl,* (EDNY 2020)(same);  *International Technologies Marketing, Inc. v. Verint Systems, Ltd.,* (SDNY 2016)("Under New York law, unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract claim."); *AA Medical, PC v. Centene Corporation*, No. 21-CV-5363 (JS) (ST) (EDNY 2023)(New York Court's analyze  "*quantum meruit* and unjust enrichment claims under a single framework").

28

**C.     Quantum Meruit Claims are Clearly At Law- Thus Unjust Enrichment Claims, their counterparts, As Set Forth Above, are At Law.**

The Court in *Athletes and Artists, Inc. v. Millen*, 1999 WL 587883, *8 n.16 (S.D.N.Y. Aug. 4, 1999) held "It now seems settled that an action for quantum meruit must be deemed an action at law. Accordingly, A&A's jury demand as to their quantum meruit claim must be honored." See also *Aniero Concrete Co., Inc. v. New York City Constr. Auth.*, 2000 WL 863208, *10 (S.D.N.Y. June 27, 2000) ("under New York law the correct characterization of a quasi contract quantum meruit claim is that of an action at law"); *Dayton Superior Corp. v. Marjam Supply Co., Inc.*, 2011 WL 710450, *19 (E.D.N.Y. Feb. 22, 2011) (same); *see also Unicorn Crowdfunding, Inc. v. New Street Enterprise, Inc.*, 507 F. Supp.3d 547, 577 n.22 (S.D.N.Y. 2020) ("New York courts treat actions for quantum meruit or **unjust enrichment** as actions at law"). Therefore, unjust enrichment/quantum meruit claims by out-of-network physicians against insurers who refused to pay for services to patients, require access to Article III Courts and jury trial if requested.

To be sure it has been well-established, as demonstrated above, that New York deems unjust enrichment and quantum meruit to be one action. The additional authority classifying quantum meruit to be a legal remedy, applies with equal force to its twin, unjust enrichment. Thus claims for unjust enrichment (quantum meruit) must be tried with the benefit of Article III and the Seventh

29

Amendment; and the NSA removing such claims and dumping them in arbitration violate those Constitutional principles.

**D.    The NSA Violates Article III of the United States Constitution**

"The judicial Power shall extend to all Cases, <u>in Law and Equity,</u> arising under this Constitution, [and] the laws of the United States." U.S. Const. art. 3, § 2, cl. 1 (emphasis added).

The unconstitutionality of the NSA is not only for violating the Seventh Amendment in particular, but violating the guarantee of access to Article III courts generally. Article III courts hear all cases whether in law or equity.   U.S. Const. art. 3, § 2, cl. 1   By extracting common law claims, such as unjust enrichment, and depositing them into Article II created Independent Dispute Resolution fora, the NSA is in violation of the Constitution. Access to Article III courts is a pillar of the Constitution. If this Court found unjust enrichment to be an equity claim, the NSA still is unconstitutional by violating Article III.

*Granfinanciera, SA v. Nordberg*, 492 US 33 (1989), familiarly held  that "public rights" may be adjudicated outside of Article III Courts, but "private rights" <u>must</u> be tried under Article III Courts. In *Executive Benefits Ins. Agency v. Arkison*, 573 US 25( 2014), the Court noted of *Granfinanciera, SA* "The Court distinguished between cases involving so-called 'public rights,' which may be

30

removed from the jurisdiction of Article III courts, and cases involving 'private rights', **which may not."** *Id* at 31 (emphasis added).

The United States Supreme Court held in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co*., 458 US 50  (1982) "[W]hen the right being adjudicated is not of congressional creation", and Congress tries to assign them to special arbitrations panels "such inroads suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution <u>**reserves for Art. III courts."**</u> *Id* (emphasis added).

In *Stern v. Marshall*, 564 US 462 (2011), the Court held, "when a suit is made of "the stuff of the traditional actions <u>at common law</u> tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with <u>Article III judges in Article III courts."</u> *Id* at 2609

# VI

## Balance Billing Patients

Appellees do not attempt in any material way to challenge Appellant's argument that the NSA's flat out prohibition of providers "balancing billing" and funneling all provider compensation into the IDR violates Article III and the Seventh Amendment. Just some of the innumerable cases providing that physicians may sue patients under quantum meruit are set forth at Br. 44-50. This too is a

common law right, which cannot be usurped and shoveled into an Article II

arbitration. Nor do they challenge the showing that that quantum meruit is a legal

remedy.

Instead Appellees flat out fabricate the claim that "plaintiffs' brief

repeatedly makes clear that their core objection to the Act is not that it requires

them to use arbitration when pursuing compensation from insurers but, rather, that

they can no longer bill and sue their patients." p. 19. In fact, Appellants' brief

states "there is a deep body of well-established common law which permits

'balance billing' and filing suit against a patients, **although physicians rarely if**

**ever actually sue patients**." Br. 6 (emphasis added).

Balancing billing is utilized as a tool to attempt to correct the market

distortion of insurance companies low-balling providers, which forces them out-of-

network. "At the very least issuing bills to patients encourages insurance

companies, who unlike doctors who save lives, are driven entirely by greed and

avoiding payment as much as possible, to agree to more reasonable in-network

payments. "JA-36.

Appellees wildly inaccurate claim is further belied by the fact that the

Appellants devote **18 pages** (Br. 25-43) to analysis of the unconstitutionality of

usurping claims of unjust enrichment against insurers from Article III, and only **6**

to the issue of "balancing billing" (*Id,* 44-50). The gravamen of Appellants' appeal

32

is usurping providers' claims of unjust enrichment against insurers from Article III

Courts and the Seventh Amendment, and dumping them in Article II-created

arbitration is unconstitutional.

According to Appellees the vast majority of Americans cannot even pay a

$400 bill. Insurance companies are worth billions. It is irrational to suggest

Appellants want to "go after" patients, and leave the insurance companies alone.

Appellees statement seems more like a floundering emotional attack which is

100% inaccurate.

## VII

## THE TAKINGS CLAUSE

This claim should not have been dismissed, pursuant to FRCP 12(b)(6). The

claim is sufficient on its face, but the record needs to be further developed, as this

suit was brought only at the time the NSA became effective. Although that is not

unreasonable, as a party may bring an action *before* he or she knows their home

will be demolished with no compensation promised, in one and a half years, the

effects on Plaintiff's practice, and others, has been devastating.

As held in *Palazzolo v. Rhode Island*, 533 US 606 (2001): "Where a

regulation places limitations on land that **fall short of eliminating all**

**economically beneficial use,** a taking nonetheless may have occurred, depending

on a complex of factors including the regulation's economic effect on the

landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action. *Penn Central Transp. Co. v. New York City,* 438 US 104, 124 (1978). These inquiries are informed by the purpose of the   Takings Clause, which is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."

Appellees mischaracterize the "reasonable investment backed-expectations" with pure "profit". Appellees are at this point not even able to meet their over-head, i.e., they are completely under-water as a result of the NSA. This can be demonstrated on the record. Dismissal pursuant to FRCP 12(b)(6) was premature. Appellants have since had time to develop the record to permit this claim to move forward.

## CONCLUSION

For all of the aforementioned reasons, Plaintiffs-Appellants respectfully request this Court reverse the District Court's Order denying a preliminary injunction and temporary restraining order and dismissing the entire complaint.

Dated: New York,
New York, August 21, 2023

Respectfully Submitted,

*/S/ Nick Wilder, Esq.*
The Wilder Law Firm
301 West 57 Street, Suite 19B New York, NY 10019
(212) 951-0042
nick@wilder.law
*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:
This brief contains 6,986 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:
This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.

Dated: August 21, 2023

## CERTIFICATE OF SERVICE

On August 21, 2023 I filed and served the foregoing APPELLANTS' REPLY BRIEF via this Court's electronic-filing system.

14-point font, Times New Roman.

Dated: New York,
New York, August 21, 2023

*/S/ Nick Wilder, Esq.*
The Wilder Law Firm
301 West 57 Street, Suite 19B New York, NY 10019
(212) 951-0042
nick@wilder.law
*Counsel for Plaintiffs-Appellants*