# 22-3054

### In the
# United States Court of Appeals
## For the Second Circuit



DANIEL HALLER and LONG ISLAND SURGICAL PLLC,

*Plaintiffs-Appellants,*

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH AND HUMAN SERVICES, U.S. OFFICE OF PERSONNEL MANAGEMENT, KIRAN AHUJA, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE U.S. OFFICE OF PERSONNEL MANAGEMENT, U.S. DEPARTMENT OF LABOR, JULIE SU, IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF LABOR, U.S. DEPARTMENT OF THE TREASURY, JANET YELLEN, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP)

## PETITION FOR PANEL REHEARING

THE WILDER LAW FIRM
*Attorneys for Plaintiffs Appellants*
301 West 57th Street, 19b
New York, New York 10019
(212) 951-0042
nick@wilder.law

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

I     Introduction ...................................................................................1

II    Brief Background ............................................................................1

III   The Appeal and this Court's Summary Order ...................................3

IV   The Point for the FRAP 40 Panel Rehearing: Plaintiffs-Appellants did Not Abandon the Constitutional Infirmity of the NSA's Prohibition of Billing Patients ........................................................................................4

       A. The Brief on Appeal ...............................................................5

           i.  Common Law ................................................................5

       B. Oral Argument .......................................................................9

V    Caselaw Makes Absolutely Clear that Simple Common Law Claims are the Provenance of Article III and the Seventh Amendment, and Cannot be Taken by Article I Legislative "Schemes" ...............................................15

CONCLUSION ..................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases:</u>

*Becker v. State of NY,*
    104 Misc. 2d 588 (Crt of Claims 1980) .................................................7

*Haller et. al. v. U.S. Dep't of Health & Hum. Servs,*
    p.3 (2nd Cir, Summary Order 1-23-24) ...........................................3, 9

*Huntington Hosp. v. Abrandt,*
    4 Misc.3d 1, 779 N.Y.S.2d 891 (App. Term 2004) ...........................6

*Long Island Jewish Medical Center v. Budhu,*
    20 Misc.3d 131(A), 867 N.Y.S.2d 17 (App. Term 2008)...................6

*McQuire v. Hughes,*
    27 NY 516 (NY)(1913)......................................................................7

*Murray's Lessee v. Hoboken Land & Improvement Co.,*
    59 U.S. 272 (1856) ..........................................................................16

*Northeast Remsco Constr. v. Picone,*
    2012 NY Slip Op 51229 (Sup. Ct., Nassaut Cty., 2012) ...................8

*Shapira v. United Med. Serv.,*
    15 NY2d 200 (1965) ..........................................................................7

*Stern v. Marshall,*
    564 US 462 (2011) ...........................................................................15

*Thomas v. Union Carbide Agricultural Products Co.,*
    473 U.S. 568 (1985)..........................................................................16

*United Healthcare Servs., Inc. v. Aspirinio,*
    16 N.Y.S.3d 139, 49 Misc. 3d 985
    (Sup. Ct. Westchester Cty. 2015) Scheinkman, J.S.C).......................8

*Yee v. Escondito,*
   503 U.S. 519 (1992) ............................................................................12

**Rules, Laws and Statutes:**

22A NY Jur 2d, Contracts § 591 .................................................................7

42 U.S.C. § 300gg-111 ...........................................................................1, 2

42 U.S.C. § 300gg-131 ...........................................................................1, 2

42 U.S.C. § 300gg-132 ...........................................................................1, 2

42 USC § 1395dd .......................................................................................7

N.Y. Pub. Health Law § 2805-b ................................................................7

# I

## Introduction

This petition is submitted under Federal Rules of Appellate Procedure ("FRAP") 40- Petition for Panel Rehearing. On appeal from the District Court, on January 23, 2024, this Court issued its Summary Order, finding that the common law to sue insurers was forfeited. Thankfully, this Court remanded to District Court to dismiss it without prejudice to refile the claim in a new complaint.

On another note, this Court held that the appeal of the District Court's denial of the same challenge of the prohibition against billing and suing patients was "abandoned". Respectfully this is incorrect, and this Order reflects a misapprehension by the Court. Plaintiff-Appellants' bedrock brief fully sets forth an abundance of common law permitting medical providers to bill/sue patients, re-affirmed in our oral argument on January 3, 2024.

# II

## Brief Background

With the ***stated goal*** of improving access to affordable health care, and preventing "surprise bills", the United States Congress enacted the "No Surprises Act" (Pub. L. 116-260).The Act went into effect on January 1, 2022. The key provision are 42 U.S.C. § 300gg-111(c), and§ 300gg-131 and 300gg-132.

The Act absolutely prohibits any medical care providers from "balance billing" (or suing) any patients, whose lives they saved. Period. 42 U.S.C. § 300gg-131 and 300gg-132. The purported magical bullet is the Independent Dispute Resolution Entity ("IDR"). The IDR lacks any semblance to Article III. The process is done by online submission, and there is no argument. The "arbiters" are given brief training.

The process is effectively mandatory. Either party "may" initiate the process, but once initiated both must participate. "The independent dispute resolution process shall be initiated by a party …by submission to the other party" §300gg–111 (c)(1)(B). Moreover, if one elects to initiate and the other does nothing the other simply defaults, not unlike a lawsuit. A medical provider may not include a patient.

In the IDR, the first consideration listed as "General" is the Qualified Payment Amount ("QPA"), submitted by the insurer (The QPA is not analyzed or available to the medical provider or IDR). §300gg–111 (c)(5)(C)(i)(I). The QPA is a number that is calculated in secret by the insurer based on the insurer's own records with very limited disclosures. Any other factors are "Secondary". §300gg–111 (c)(5)(C)(i)(I). And the certified IDR entity … shall not consider the usual and customary charges of medical providers § 300gg-111(c)(5)(D).

The net effect of the IDR, is the considerations place a heavy thumb on the scale of the insurer. The result is chaos, medical providers losing enormous amounts of money and going out of business, a great harm to the public interest.

The NSA is also patently unconstitutional.

### III

### <u>The Appeal and this Court's Summary Order</u>

This appeal followed. On January 23, 2024, this Court issued its Summary Order. This Court observed that prior counsel did not assert a claim against insurers, and it is raised for the first time on appeal. It was deemed forfeited. "But neither should Appellants be prejudiced if they wish to replead and to advance such claims before the district court at a later date." *Haller et. al. v. U.S. Dep't of Health & Hum. Servs,* p.3 (2nd Cir, Summary Order 1-23-24). The Court held: "the extent the district court concluded that Appellants lacked a common-law cause of action against insurers, we vacate and remand with instructions to dismiss Appellants' Article III and Seventh Amendment claims without prejudice to allow Appellants to plead such a claim if they so choose." *Id* at 2. The Court also dismissed the Takings Claim, as being based only on predictions of profits. *Id* at 2-3.

Additionally, the Court held "We thus affirm the judgment of the District Court only insofar as it concludes that Appellants failed to state a claim under

Article III or the Seventh Amendment based on their right to bring common-law actions against patients – **<u>a claim Appellants have abandoned on appeal</u>**. *Id* at 2 (emphasis added).

Respectfully, the Appellants-Defendants in no way abandoned their common law actions against patients. Nor abandoned in any way appeal of the NSA's flat out prohibition of medical providers to ever balance bill/sue patients, a stark violation of their Article III, Seventh Amendment Rights. This is proven by the immovable bedrock of the brief on appeal, and the affirmations thereof memorialized during oral argument.

**IV**

**The Point for the FRAP 40 Panel Rehearing: Plaintiffs-Appellants did Not Abandon the Constitutional Infirmity of the NSA's Prohibition of Billing <u>Patients</u>**

Analysis of Plaintiffs-Appellants' brief demonstrates impenetrably that there was no abandonment of the appeal of the District Court's dismissal of the challenge to the NSA's unconstitutional prohibition of billing/suing patients. The appellate brief is immovable, and oral argument memorialized in the transcript.

In the most unlikely scenario that this Court continues to view this strand of the appeal <u>abandoned</u>, the erudite reasoning concerning the right to sue insurers deemed <u>forfeited</u> set forth in oral argument by the Court applies with equal force. This Court should not rest on a legal question deemed abandoned which may be

4

not be correct as a matter of law. See 1-3-24 Trans., P. 18, at 11-21; and see *Id* at

p. 19, at 10-21. There is a serious Article III, Seventh Amendment argument

concerning the NSA's prohibition of a medical provider's suing a patient, and the

Court should not affirm on the basis of a (perceived) mistaken abandonment.

## A. The Brief on Appeal

Plaintiffs-Defendants' appellate brief ("PD's br."), at p. **44-50**, sets forth in

crystal clear terms our argument supporting the challenge to the constitutionality of

the Act's prohibition against balance billing (suing) patients.

Plaintiffs-Appellants appellate brief argued extensively that there is an

abundance of common law cases in New York wherein medical providers sued

patients and prevailed. PD's br. 44-50. The entire section is dedicated in detail to

the proposition that medical providers have an Article III, Seventh Amendment

right to sue patients and that well-established common law prohibits the NSA from

completely dispensing with the right to bill/sue patients. **The Constitutional right**

**to bill/sue argument is clearly not abandoned.**

### i. Common Law

Under constitutional jurisprudence, where there is an established body of

common law, not derived or dependent on a new public right, it is a private right,

and cannot be removed from Article III, and access to the Seventh Amendment.

The No Surprises Act does not even permit financial grievances against patients

access to the IDR. PA-Br., 49

In Plaintiffs-Appellants' brief on appeal, we cite numerous common law

cases permitting medical providers access to sue patients, whether in quasi contract

and unjust enrichment or implied contract by quantum meruit, and therefore

requiring access to Article III and the Seventh Amendment.

**See the cases contained in Plaintiffs-Appellants' brief, repeated here,**

**demonstrating the claim that medical providers have a common law right to**

**sue patients was in no way abandoned.** . See *Long Island Jewish Medical*

*Center v. Budhu*, 20 Misc.3d 131(A), *1, 867 N.Y.S.2d 17 (App. Term 2008), PA

Br., p.45 (Plaintiff medical provider rendered services to a patient, invoiced him,

and he refused to pay. The Appellate Court reversed denial of plaintiff's motion for

summary judgment on his claim for account stated, holding "The performance by

plaintiff and acceptance of the services by defendant gave rise to an inference that

an implied contract to pay for the reasonable value of such services existed")*;*

*Huntington Hosp. v. Abrandt*, 4 Misc.3d 1, *3, 779 N.Y.S.2d 891, 892 (App. Term

2004)(affirming grant of summary judgment to medical provider who filed suit for

payment of services, under account stated, where patient claims fees were 'not fair

and reasonable'….The performance and acceptance of services can give rise to an

inference of an implied contract to pay for the reasonable value of such services

(22A NY Jur 2d, Contracts § 591)", *Id* at 45; *Shapira v. United Med. Serv.*, 15 NY2d 200, 220 (1965)("It is not necessary to such a medical relationship and its resulting mutual obligations that the undertaking to perform an operation be parsed out in words on one hand and an agreement to pay for it be parsed out in words on the other. That a fee is to be earned is overwhelmingly inferred and implied from the situation of medical examination and medical treatment. Indeed, in modern practice a patient may have little or no conscious contact with the surgeon who operates on him." (emphasis added); *Id* at 46; *Becker v. State of NY*, 104 Misc. 2d 588, FN 2 (Crt of Claims 1980) (Crt of Claims 1980)(quasi-contract has been used "to recover fees for medical services rendered to unconscious persons incapable of assenting to an express contract *Id*; *McQuire v. Hughes*, 27 NY 516, 521 (NY)(1913) ("it should be taken as the rule of law, too well settled upon authority to be now questioned" that where a physician is required to perform emergency services such as under  EMTALA, 42 USC § 1395dd, and N.Y. Pub. Health Law § 2805-b(2)(b), she may recover from the patient under quantum meruit or implied contract. *Id.*

A medical provider must provide life-saving services, under penalty of imprisonment (N.Y. Pub. Health Law § 2805-b(2)(b), yet is forbidden from balance billing a patient, if needed.

See also *United Healthcare Servs., Inc. v. Aspirinio*, 16 N.Y.S.3d 139, 49 Misc. 3d 985, 991 (Sup. Ct. Westchester Cty. 2015) Scheinkman, J.S.C). Here the insurer sued defendants medical providers to enjoin them from balance billing. The Court denied the injunctive relief holding "absent presentation of an agreement with [the patient] whereby defendants agreed to limit the patient's obligation to the proceeds of insurance... there is no reason why defendants would not be free to seek the balance of their fees from the patient in question." **This case raises the same issues of the Act's requirement of the cryptic "QPA"**:

> McLafferty also notes, United does not provide any of the underlying FAIR Health data to support its argument. In particular, McLafferty points out that, among other things, United has not set forth the codes it referenced in order to assess Asprinio's fee. If United is using codes relevant to a routine procedure, as opposed to complex surgery, United's conclusion would be invalid. McLafferty opines that, given the lack of disclosure as to the information that United used to make its decision, it is not possible to determine whether United's position is itself reasonable or unreasonable.

*Id* at 991 (emphasis added), *Id* at 48*;*

See *Northeast Remsco Constr. v. Picone*, 2012 NY Slip Op 51229 (Sup. Ct., Nassaut Cty., 2012)("an implied-in-law contract or quasi-contract is not a contract at all but instead is an obligation that the law imposes to prevent unjust enrichment (internal citations omitted). It is a restitutionary device, the classic example of which arises when a doctor treats an unconscious person. In that circumstance, the

law imposes a quasi-contract to compensate the doctor for rendering medical

treatment").

B. **Oral Argument**

**The Constitutional Right To Bill/Sue Argument Is Clearly Not Abandoned**

The transcript of oral argument in Haller, et al. v. US Dept. of Health, et al, 22-3054, on January 3, 2024, is memorialized herein as "1-3-2024 Trans."

p. 8

17.**MR. WILDER:** So prior counsel was prior
18. counsel…
22...But the Court
23. itself spent six pages discussing, and I would
24. underscore, A, the joint appeal -- the Joint
25. Appendix, page 56 to 61, the Court spent six pages


17.**MR. WILDER Continuing**
p. 9
1. discussing this issue of arbitration versus --
2 discussing the constitutionality of having the
3 doctors have to go to arbitration to –


4 **THE COURT** [Circuit Judge Sarah A. L. Merriam **]** But because of a
common law
5 right to sue patients, right? That's 56 to 61 –


6 **MR. WILDER:** *Both of them. Both issues*
7 *are presented, although the -- the Court did not*
8 *discuss the common law right to sue patients almost*
9 *at all, but I did include innumerable cases in which*
10 *doctors, prior to the NSA, sued patients*
11 *successfully*. And there are also innumerable cases
12 in which the doctors sued insurance companies

9

13  successfully, so –

1-3-2024 Trans, p.8, 24-25 and p. 9, 1-13

This exchange memorializes clearly that I was referring to the lower Court's Decision and Order at Joint Appendix p. 56-61, for "both issues" : suing insurers **and patients**. Moreover, the statement "**but I did include innumerable cases in which doctors, prior to the NSA, *sued patients successfully***" makes **100% clear that I was *not abandoning*** the argument concerning the unconstitutionality of the NSA's prohibition of billing/suing patients, and I was also following my appellate brief which I referenced. (Trans, *Id*)(emphasis added).

Just after that clear exchange the Court asked:

P. 9 continued

14 **THE COURT:** Are you pursuing the claim
15 that the aspect of this argument that is hinged on
16 whether there was a common law right to sue
17 patients, so the way I was reading this was below,
18 you focus solely on a common law right to sue
19 patients and conceded a lack of a common law right
20 to sue insurers. And now we've reversed that, that
21 you're no longer proceeding --

Reading this point from the Court, I most humbly and respectfully adduce the following: there is not any reason at all that the Court should believe I had switched from appealing both the right to sue patients **to** the right to sue insurers

10

only. Respectfully, the Plaintiff-Appellants made very clear in our brief on appeal we were appealing both the common law to sue patients and the common law to sue insurers. **P. 44-50 of our brief is dedicated entirely to the issue of patients and on p. 25-37 the issue of suing insurers.**

Respectfully, there is no basis to have wondered if our inclusion of suing insurers was to the exclusion of the patient argument: <u>we set forth arguments for both in the brief, and restated them during oral argument.</u> So "reversal of that" on oral argument here could only seem to mean "reversal" of prior counsel's focus on one to the exclusion of the other, since on appeal we <u>clearly including both.</u>

Please recall early in this oral argument I stated:

6  **MR. WILDER: …. *Both issues***
7  ***are presented, although the*** -- the [district]Court did not
8  discuss the common law right to sue patients almost
9  at all, ***but I did include innumerable cases in which***
10  ***doctors, prior to the NSA, sued patients***
11  ***successfully***. And there are also innumerable cases
12  in which the doctors sued insurance companies
13  successfully, so –
1-3-2024 Trans, p.8, 24-25 and p. 9, 1-13

continuing

22  **MR. WILDER:** And under -- under -- I
23  understand your question. Under Yee versus
24  Escandito and a plethora of other cases, the --
25  there -- these are United States Supreme Court

P. 10

1  cases. The arguments can change. As long as you're

2  --

   Our reference to *Yee v. Escondito* was in support of the addition of a new

argument (suing insurers) for the same claim: violation of Article III and

seventh amendment. I was focusing on how to bring in the insurance argument,

because it was being argued as forfeited

3  **THE COURT:** But just help me make sure --
4  am I right about what the arguments are? Before we
5  -- I understand that we –

6  **MR. WILDER:** Yeah. Yes, correct
7  correct.

8  **THE COURT:** Okay. All right.

   Here again, when the Court asks, "am I right about what the arguments are?"

and I interjected  "Yeah. Yes, correct".  I was here just affirming, as state above,

given the clear arguments in Plaintiffs-Appellants brief arguing fervently on the

issue of suing patients, at pages 44-51, and arguing fervently concerning suing

insurers on pages 25-37, I was shifting to inclusion of **both arguments**.

**Respectfully, <u>there is no basis to have wondered if our inclusion of suing</u>**

**<u>insurers was to the exclusion of the suing patients: we set forth arguments for</u>**

**<u>both</u>.**

9. **MR. WILDER:** So as long as your claim is
   10  the same, for example, a Seventh Amendment

11  violation, you can change the argument, and this is
12  repeated over and over and over and over again. And
13  what we've changed -- the same argument, Seventh
14  Amendment violation or the same claim, Seventh
15  Amendment violation, but we've shifted to a -- a
16  better argument that -- which was addressed
17  extensively by this Court -- I mean -- excuse -- by
18  the -- the Court below, and for six pages, that the
19  denial -- that the doctors have a strong body of
20  common law allowing them to sue insurance companies,
21  including in federal court in New York.

Finally in this portion of the transcript, "shifting to a better argument" simply meant strengthening the ***claim***: violation of Article III, and the seventh amendment,  by putting greater emphasis on the insurance argument, but not eliminating the patient claim. Why do that? It simply makes no sense at the last second during oral argument to "abandon" a perfectly strong claim. They are not mutually exclusive. And we did not abandon it.

Also, this required explaining why we can do this despite the "forfeiture". The insurance argument had been inexplicably renounced by plaintiffs' prior counsel at the district court. And it was extensively but erroneously discussed by the district judge, and dismissed by the district judge on the factually mistaken basis that there was no common law. This shift **to include** the insurance issue along with patients, and spend extra time explaining it (since it was deemed forfeited) made it a better argument.

13

The inclusion of the patient argument in **the brief** demonstrates as an anchor dispositively that it was not "abandoned". It would be senseless to present this strong argument in the appellate brief, and then suddenly during oral argument abandon it.

To the extent the there is still any doubt, I would direct the Court's attention to the following by Judge Park, concerning the forfeited insurance argument.

```
P. 18 [Circuit Judge Michael A. Park]
11  It -- it arguably raises a
12  different problem, though, which is that the
13  District Court's analysis was resting on something
14  that was conceded that may or may not be correct as
15  a matter of law. And are you asking us to affirm on
16  that basis just because it was a forfeited argument?
17  MS. CLARK: So I --
18  THE COURT: -- there may be a serious, you
19  know, Seventh Amendment argument here and to affirm
20  on the basis of a concession it may have been a
21  mistake seems problematic to me.
```

1-3-2024 Trans, p.18, 11-21.

This sagacious reasoning adopted by this Court in its January 23, 2024 Summary Order, to dismiss the forfeited argument, and remand to dismiss without prejudice, permitting Plaintiffs-Defendants to replead, may be applied with equal force concerning our constitutional challenge to the prohibition of billing/suing patients deemed abandoned. At the very least if the Court were to continue to deem it abandoned, "when the District Court's analysis was resting on something that

was conceded that may or may not be correct as a matter of law. And are you

asking us to affirm on that basis just because it was an [abandoned] argument?

There may be a serious.. Seventh Amendment argument here and to affirm on the

basis of a concession it may have been a  mistake seems problematic…"

**V**

**Caselaw  Makes Absolutely Clear that Simple Common Law Claims are the
Provenance of Article III and the Seventh Amendment, and Cannot be Taken
by Article I Legislative "Schemes"**

It is simply undeniable that prohibiting medical providers from billing-suing

patients is unconstitutional. It is a simple common law right, which is neither

created by nor dependent upon Article I, neither derived from, nor depended upon

the NSA. Nor is it abandoned.

*In*  Stern v. Marshall, 564 US 462, (2011), the United States Supreme Court

held:

> This case involves the most prototypical exercise of judicial
> power…a **common law cause** of action, when the action neither
> derives from nor depends upon any agency regulatory regime.
>
> *Id* at 467 (emphasis added).

The Court  continued:

> If such an exercise of judicial power may nonetheless be taken
> from the **Article III** Judiciary simply by deeming it part of
> some amorphous "public right," then Article III would be
> transformed from the guardian of individual liberty and
> separation of powers the Court has long recognized into mere
> **wishful thinking.**

15

*Id* (emphasis added)

In the instant case, the District Court held:

> When Congress enacted the No Surprises Act, it permitted
> health care providers to recover payment directly from insurers
> for out-of-network services, which is a new public right. **Out-
> of-network providers' claims against insurers do not arise
> under <u>state common law</u>, but instead depend "upon the will
> of [C]ongress,"**

JA-48 at 12 (emphasis added)(citing *Murray's Lessee v. Hoboken Land &
Improvement Co.*, 59 U.S. 272, 284 (1856).

The District Court recognized that the salient factor permitting or prohibiting
Article I to extricate rights from Article III Courts is whether they depend "upon
the will of Congress" or **arise from  common law**. As with the private right to sue
insurers, **the simple right to <u>bill and sue patients arises from common law</u>.** The
balance billing claim was fully submitted by prior counsel, but the District Court
wrongfully ignored the of common law right to sue patients (and on appeal we
included more common law cases).

*In Thomas v. Union Carbide Agricultural Products Co.*, the United States
Supreme Court emphasized that "Any right to compensation from follow-on
registrants under § 3 (c)(1)(D)(ii) for EPA's use of data results from FIFRA and
**does not depend on or replace a right to such compensation <u>under state law</u>
<u>[common law]</u>.**" *Id* at 594 (emphasis added].

During oral argument in the instant case, the judges too recognized that the essence is whether Congress created a new public right, or there is a common law, not derived from or depended upon Congress. For example:

p.19

```
10  THE COURT: But the District Court's
11  entire public rights analysis rests on the absence
12  of a common law right against insurers. So if
13  that's a mistake -- and -- and that was fairly
14  assumed by this Court in light of what happened
15  below, but if that's not right, then it seems
16  problematic to affirm
```

p. 19, 10-16 (emphasis added)(Judge Park)

The legal analysis concerning the NSA is uncomplicated. Congress, Article I, wished to create legislation to eliminate surprise bills and to lower premiums. So in one fell swoop they just purported to make the right of a medical provider to sue a patient disappear. This they cannot do. They purport to fix any issue by creating a Frankensteinian Independent Dispute Resolution Entity, which takes place entirely online, with no arguments, and insurance company's secret QPA's on top.

The common law right of a medical provider to sue a patient is simple, basic, and iron-clad. Where it exists, Article I cannot simply extinguish it, any more than they can extinguish Article III itself and the tripartite system of governance.

17

Plaintiff-Appellants did not and would not "abandon" this claim. The submission of the written brief is an immobile rock, it cannot blow away in the wind. The claims is further inscribed in the transcript of the oral arguments.

And no matter, the Court's holding that a *claim* of abrogation of the common law right to sue insurers in Article III with Seventh Amendment rights renders moving them into an Article I forum unconstitutional, but was *deemed forfeited* should be permitted at least remand to refile, applies with equal force to the identical argument concerning the prohibition of suing patients but *deemed abandoned* (respectfully, incorrectly). See 1-3-24 Trans., P. 18, at 11-21; and see *Id* at p. 19, at 10-21.

## **CONCLUSION**

Petitioners respectfully request this Court grant out FRAP 40- Petition for Panel Rehearing, in accordance with the aforementioned facts and arguments, and for such other and further relief as is just, equitable, and proper.

New York, New York
March 15, 2024                                   Respectfully submitted,

_____
Nick Wilder, Esq.
*Counsel for Plaintiffs-Appellants*
THE WILDER LAW FIRM
301 West 57 Street
New York, NY 10019
(212) 951-0042
nick@wilder.law

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.  This petition complies with the type-volume limitation of Fed.R.App.P. 40(b)(2) because:

    This petition contains 3,883 words, excluding the parts of the brief exempted by Fed.R.App.32(f).

2.  This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:

    This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.

Dated: March 15, 2024

**SUMMARY ORDER, DATED JANUARY 23, 2024**

22-3054
*Haller v. U.S. Dep't of Health & Hum. Servs.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

 1    At a stated term of the United States Court of Appeals for the Second Circuit,
 2  held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of
 3  New York, on the 23rd day of January, two thousand twenty-four.
 4
 5  **PRESENT:**
 6          **MICHAEL H. PARK,**
 7          **EUNICE C. LEE,**
 8          **SARAH A. L. MERRIAM,**
 9                  *Circuit Judges.*
10  _____
11
12  **Daniel Haller and Long Island Surgical PLLC,**
13
14                  *Plaintiffs-Appellants,*
15
16          **v.**                                               **22-3054**
17
18  **U.S. Department of Health and Human Services,**
19  **Xavier Becerra, in his official capacity as**
20  **Secretary of Health and Human Services, U.S.**
21  **Office of Personnel Management, Kiran Ahuja, in**
22  **her official capacity as Director of the U.S. Office**
23  **of Personnel Management, U.S. Department of**
24  **Labor, Julie Su, in her official capacity as Acting**
25  **Secretary of Labor, U.S. Department of the**
26  **Treasury, Janet Yellen, in her official capacity as**
27  **Secretary of the Treasury,**
28
29                  *Defendants-Appellees.*\*
30  _____

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

CERTIFIED COPY ISSUED ON 01/23/2024

| | |
|---|---|
| **FOR PLAINTIFFS-APPELLANTS:** | NICK WILDER, The Wilder Law Firm, New York, NY. |
| **FOR DEFENDANTS-APPELLEES:** | SARAH J. CLARK (Joshua M. Salzman, *on the brief*), U.S. Dep't of Justice, Washington, DC. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Donnelly, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART**, **VACATED IN PART**, and **REMANDED** for further proceedings consistent with this order.

Daniel Haller and his associates at Long Island Surgical PLLC are surgeons who challenge the constitutionality of the No Surprises Act.   Pub. L. No. 116-260 (2020) (codified at 42 U.S.C. § 300gg-111 et seq.) (the "Act").   Appellants argue that the Act exceeds Congress's authority to assign adjudicatory functions to non-Article III tribunals, violates their right to a jury trial under the Seventh Amendment, and effects an unconstitutional taking of payments they would otherwise receive from patients.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a district court's grant of a motion to dismiss de novo, accepting all factual allegations as true and drawing all inferences in favor of the plaintiff.   *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

A.    Article III and Seventh Amendment Claims

Appellants argued in the district court that Congress created no new public right when it enacted the No Surprises Act because the Act supplanted doctors' longstanding common-law

2

1    cause of action to sue *patients* for the reasonable value of emergency medical services. *See* Joint

2    App'x at 128-29 ("Plaintiffs' common law claims are against the recipient of the medical

3    treatment, not the insurer.").[1]  Appellants did not argue that they had any particular right of action

4    against *insurers*, and they expressly conceded before the district court that they had no such claims.

5           On appeal, Appellants assert for the first time that they may have held a cause of action

6    against insurers before the No Surprises Act.  We decline to consider that argument for the first

7    time on appeal.  But neither should Appellants be prejudiced if they wish to replead and to

8    advance such claims before the district court at a later date. *See United States v. Gomez*, 877 F.3d

9    76, 94-96 (2d Cir. 2017) (noting our discretion in handling forfeited arguments).  We thus affirm

10   the judgment of the district court only insofar as it concludes that Appellants failed to state a claim

11   under Article III or the Seventh Amendment based on their right to bring common-law actions

12   against patients – a claim Appellants have abandoned on appeal.   To the extent the district court

13   concluded that Appellants lacked a common-law cause of action against insurers, we vacate and

14   remand with instructions to dismiss Appellants' Article III and Seventh Amendment claims

15   without prejudice to allow Appellants to plead such a claim if they so choose.[2]

16         B.    Takings Clause Claims

17         We affirm the district court's judgment as to Appellants' takings claims.  The Takings

18   Clause provides that "private property [shall not] be taken for public use, without just

---

[1] The district court correctly concluded that the existence of a common-law cause of action against *patients* did not render providers' right to recover against *insurers* a "private" right that might (or might not) have been supplanted by the No Surprises Act.

[2] We express no opinion as to whether providers had a common-law cause of action against insurers before the No Surprises Act or, if so, whether the Act replaced such a cause of action.

3

1   compensation." U.S. Const. amend. V.  Our precedents recognize two types of takings: physical

2   and regulatory.  *See Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d. Cir. 2006).  Only the

3   regulatory variety is at issue here.

4          To determine whether "justice and fairness require that economic injuries caused by public

5   action must be deemed a compensable taking," we employ an "ad hoc, factual" approach that

6   considers "the character of the governmental action, its economic impact, and its interference with

7   reasonable investment-backed expectations." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-

8   06 (1984) (citation and quotation marks omitted); *Buffalo Tchrs. Fed'n*, 464 F.3d at 374,

9   *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 83 (1980).  Of course, not every alleged

10  reduction in the value of property is sufficient to support a takings claim.  *Andrus v. Allard*, 444

11  U.S. 51, 66 (1979).  We have observed that "loss of future profits—unaccompanied by any

12  physical property restriction—provides a slender reed upon which to rest a takings

13  claim.  Prediction of profitability is essentially a matter of reasoned speculation that courts are not

14  especially competent to perform." *Id.*  We thus ask, for example, whether a regulation will

15  "*unreasonably* impair the value or use of [plaintiff's] property." *See PruneYard Shopping Ctr.*,

16  447 U.S. at 83 (emphasis added).

17         Appellants here fail to allege a regulatory taking.   They argue that what was "taken" from

18  them was "the reasonable calculation of future income stream."  Appellant's Br. at 56.  Such

19  vague and speculative allegations of an unspecified diminution in future income are insufficient to

20  state a claim under the Takings Clause.  We thus affirm the judgment of the district court as to

21  Appellants' takings claim.

22                                    *    *    *

4

1        We have considered Appellants' remaining arguments and found them to be without merit.

2    For the foregoing reasons, the judgment of the district court is **AFFIRMED IN PART**,

3    **VACATED IN PART**, and **REMANDED** for further proceedings consistent with this order.

4

5                        FOR THE COURT:

6                        Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

5

**TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS,**
**HELD ON JANUARY 3, 2024**



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS







**(800) 528-3335**

**NAEGELIUSA.COM**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

DANIEL HALLER and LONG ISLAND SURGICAL PLLC,

     Plaintiffs-Appellants,

v.                              Case No. 22-3054

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER
BECERRA, in his official capacity as Secretary of
Health and Human Services, U.S. OFFICE OF PERSONNEL
MANAGEMENT, KIRAN AHUJA, in her official capacity as
Director of the U.S. Office of Personnel Management,
U.S. DEPARTMENT OF LABOR, JULIE SU, in her official
capacity as Acting Secretary of Labor, U.S.
Department of the Treasury, JANET YELLEN, in her
official capacity as Secretary of the
Treasury,

     Defendants-Appellees.

_____

**TRANSCRIPT OF PROCEEDINGS**

**HELD ON**
**WEDNESDAY, JANUARY 3, 2024**

**BEFORE THE HONORABLE**
**MICHAEL H. PARK, CIRCUIT COURT JUDGE**
**EUNICE C. LEE, CIRCUIT COURT JUDGE**
**SARAH A.L. MERRIAM, CIRCUIT COURT JUDGE**

**THURGOOD MARSHALL UNITED STATES COURTHOUSE**
**40 FOLEY SQUARE**
**NEW YORK, NEW YORK 10007**

1                          **APPEARANCES**

2

3   **Appearing on behalf of Plaintiffs-Appellants:**

4   NICHOLAS WILDER, ESQUIRE

5   **The Wilder Law Firm**

6   301 West 57th Street, No. 19B

7   New York, NY 10019

8   (212) 951-0042

9   nick@wilder.law

10

11  **Appearing on behalf of Defendants-Appellees:**

12  SARAH J. CLARK, ESQUIRE

13  **U.S. Department of Justice**

14  Civil Division

15  950 Pennsylvania Avenue NW

16  Washington, D.C. 20530

17

18

19

20

21

22

23

24

25

```
 1              TRANSCRIPT OF PROCEEDINGS

 2                       HELD ON

 3            WEDNESDAY, JANUARY 3, 2024

 4

 5          THE COURT:  Case Number 22-3054, Haller

 6  versus United States Department of Health and Human

 7  Services.

 8          MR. WILDER:  Good afternoon, Your Honors.

 9  May it please the Court.  My name is Nick Wilder of

10  the Wilder Law Firm.  I am representing Dr. Haller

11  and his associates.  They are a surgical practice in

12  Great Neck.

13          And we are challenging the No Surprises

14  Act, which is -- I won't go through all of it

15  because I'm sure you've read it, and these kinds of

16  legislation is not very fun to read.  But,

17  essentially, the No Surprises Act was enacted

18  purportedly to eliminate any, quote, unquote,

19  surprise bills to patients who had gone into, for

20  example, the emergency room and were expecting their

21  insurance company to pay for their medical

22  treatment, and they were out of network, and they

23  did not -- the insurance did not cover either -- did

24  not cover all of what was expected in terms of costs

25  were known, after which they would get a bill from
```

1  the doctor, which was a surprise, because they

2  expected to be covered.

3          And it also provides for a -- what's known

4  as the IDR, which is the Independent Resolution

5  Board, for -- as a means of shifting any issue,

6  bringing the patients out of the question and

7  bringing the -- the doctors and insurance companies

8  together for an arbitration during -- in which each

9  side gives a number, and the arbitrator is simply to

10  decide which one of those numbers they'll go with.

11          **THE COURT:**  Is that IDR process mandatory

12  or voluntary?

13          **MR. WILDER:**  It is essentially -- it is

14  mandatory, and the -- the defendant-appellants have

15  agreed that it is mandatory.  The language,

16  essentially, in the --

17          **THE COURT:**  I don't know that you can

18  agree to what the statute says.  The question -- I

19  mean, the question is whether -- let me back up.

20          **MR. WILDER:**  Okay.

21          **THE COURT:**  The amicus brief of the -- I

22  guess the brain surgeons and associations says that

23  there's not a Seventh Amendment problem because this

24  is a voluntary -- it's a permissive process and it

25  points to the use of "may" in various places.  And

1  if it's not compulsory, then it doesn't -- it

2  doesn't preempt the common law rights, whatever they

3  may have been --

4         **MR. WILDER:**  Well, they -- it -- it does

5  by -- by virtue of the fact that if any -- either of

6  the parties choose, so they may -- either party may

7  choose that process.  And if they choose that

8  process to go through the arbitration, the other

9  party is bound to go along with it.

10        **THE COURT:**  I see.  So your clients will,

11  as a practical matter, always be stuck with the

12  process because --

13        **MR. WILDER:**  Correct.

14        **THE COURT:**  Okay.

15        **MR. WILDER:**  So -- and -- and just to

16  quote from the appellee's brief, they use the word

17  "mandatory."

18        **THE COURT:**  Well, right, but again, the

19  appellee and the appellant --

20        **MR. WILDER:**  And I'm --

21        **THE COURT:**  -- here --

22        **MR. WILDER:**  -- it's appellees.

23        **THE COURT:**  -- undisputed that you two

24  agree that it's mandatory.

25        **MR. WILDER:**  Yeah.



1          **THE COURT:**  Can you just -- to follow up

2  on that, can you tell me what it is about the

3  statute that leads you to believe that if one side

4  says, hey, can we do the 30-day negotiation, and the

5  other side says, no thanks, I'd like to sue you,

6  that the other side is required to engage.

7          **MR. WILDER:**  Yes.

8          **THE COURT:**  I'm wondering where the --

9          **MR. WILDER:**  Yes.

10         **THE COURT:**  -- if that's just the

11  implication of the statute, sort of otherwise, what

12  would the point be?

13         **MR. WILDER:**  Yes.

14         **THE COURT:**  That, otherwise, the statute

15  doesn't really have any effect, so that must be the

16  purpose.

17         **MR. WILDER:**  Yes.  It -- correct.  It

18  makes -- there's no language in there that says this

19  is a voluntary alternative for the parties to come

20  together.  It says, if one party elects to -- when

21  they -- I wish I had the language in front of me,

22  but the -- the process is initiated when one party

23  chooses to do so.  From that point on, the other

24  party has to respond, go through the 30-day

25  negotiation, and so forth.

1          The -- now, getting to -- so getting to

2    the -- quickly, just some of the problems with -- we

3    -- the first -- the first considerations for the --

4    which must be considered by the arbitration board is

5    the QPA, which -- the Qualified Payment Amount,

6    which is entirely determined by the insurance

7    companies.  And it is determined on very sketchy

8    questionable grounds that are often not disclosed.

9    They're based on, quote, "ghost rates," which they

10   don't reveal, a combination of different kinds of

11   procedures are averaged, and this is a number that

12   they give.  But I --

13          I'd like to get to the central point of my

14   appeal -- of our appeal is that the -- the doctors

15   being forced to go to arbitration is a violation of

16   the Seventh Amendment because, of course, that

17   violates their Seventh Amendment right to bring a

18   case before an Article 3 forum and -- under a jury

19   trial.  And the Court --

20          **THE COURT:**  Well, that depends on whether

21   there was a preexisting common law right --

22          **MR. WILDER:**  Right, exactly.

23          **THE COURT:**  That's --

24          **MR. WILDER:**  And there is --

25          **THE COURT:**  -- not something the District



1  Court --

2           -

3           **MR. WILDER:**  That's correct.  And the --

4  the Court correctly stated that.  The cases all

5  state that.  And it -- the Court erred in not

6  recognizing there is an abundance of common law --

7           **THE COURT:**  But how did the Court err when

8  your client -- I understand it was different

9  counsel, is my understanding --

10          **MR. WILDER:**  Mm-hmm.

11          **THE COURT:**  -- but conceded that there was

12 no common law right.  So then the Court said, thank

13 you, and put that aside and focused on the right to

14 see patients --

15          **MR. WILDER:**  I understand.

16          **THE COURT:**  -- right?

17          **MR. WILDER:**  So prior counsel was prior

18 counsel. The number one answer to that is that the

19 -- well, the Court spent six pages devoted -- the

20 other side has said, we forfeited, we forfeited, we

21 forfeited because this was not in the -- what was

22 discussed below by prior counsel. But the Court

23 itself spent six pages discussing, and I would

24 underscore, A, the joint appeal -- the Joint

25 Appendix, page 56 to 61, the Court spent six pages

1  discussing this issue of arbitration versus --

2  discussing the constitutionality of having the

3  doctors have to go to arbitration to --

4        **THE COURT:**  But because of a common law

5  right to sue patients, right?  That's 56 to 61 --

6        **MR. WILDER:**  Both of them.  Both issues

7  are presented, although the -- the Court did not

8  discuss the common law right to sue patients almost

9  at all, but I did include innumerable cases in which

10  doctors, prior to the NSA, sued patients

11  successfully.  And there are also innumerable cases

12  in which the doctors sued insurance companies

13  successfully, so --

14        **THE COURT:**  Are you pursuing the claim

15  that the aspect of this argument that is hinged on

16  whether there was a common law right to sue

17  patients, so the way I was reading this was below,

18  you focus solely on a common law right to sue

19  patients and conceded a lack of a common law right

20  to sue insurers.  And now we've reversed that, that

21  you're no longer proceeding --

22        **MR. WILDER:**  And under -- under -- I

23  understand your question.  Under Yee versus

24  Escandito and a plethora of other cases, the --

25  there -- these are United States Supreme Court

```
 1   cases.  The arguments can change.  As long as you're

 2   --

 3          THE COURT:  But just help me make sure --

 4   am I right about what the arguments are?  Before we

 5   -- I understand that we --

 6          MR. WILDER:  Yeah.  Yes, correct.

 7   Correct.

 8          THE COURT:  Okay.  All right.

 9          MR. WILDER:  So as long as your claim is

10   the same, for example, a Seventh Amendment

11   violation, you can change the argument, and this is

12   repeated over and over and over and over again.  And

13   what we've changed -- the same argument, Seventh

14   Amendment violation or the same claim, Seventh

15   Amendment violation, but we've shifted to a -- a

16   better argument that -- which was addressed

17   extensively by this Court -- I mean -- excuse -- by

18   the -- the Court below, and for six pages, that the

19   denial -- that the doctors have a strong body of

20   common law allowing them to sue insurance companies,

21   including in federal court in New York.  There are

22   several cases that permit this, especially under

23   unjust enrichment if they'd not been paid.

24          There's a --

25          THE COURT:  Are --
```



1          **MR. WILDER:**  -- a number of those cases.

2          **THE COURT:**  Are there -- do any of them

3    indicate a right --

4          **MR. WILDER:**  I'm sorry?

5          **THE COURT:**  -- a common law right as to a

6    jury trial?  You framed it as the denial of your

7    Seventh Amendment jury trial rights.

8          **MR. WILDER:**  Yes.

9          **THE COURT:**  There are cases you cite that

10   -- that -- relating to the common law right to sue

11   insurers --

12         **MR. WILDER:**  Correct.

13         **THE COURT:**  -- that involve jury trials?

14         **MR. WILDER:**  There are -- yes, there are

15   about seven or eight cases, a number of them federal

16   cases in New York, which have allowed that.  So

17   there is a common law right already.

18              That being the case, the -- the Court

19   cannot -- the -- the lower Court and any -- and the

20   law cannot extricate those common law cases and

21   input the -- and take them and put them into an

22   Article 1 new-fangled arbitration process, number

23   one.

24              And secondly -- or also -- in addition,

25   the -- the case law, which at times, says, in New

 1  York, that you cannot make -- that generally, we

 2  prefer not to have new arguments, say, however, when

 3  there are no new facts, only new -- but only matters

 4  of law in the -- in the, quote, new argument.  No

 5  new facts.  Only -- no new need for fact

 6  development.  The only matters of law and where to

 7  -- to not address it would be to leave statutory law

 8  unaddressed, which needs to be addressed, which is

 9  pivotal to the decision and would lead to bad

10  decisions.

11          **THE COURT:**  Before you run out of -- well,

12  I guess your time's out, but I -- I have a question

13  about your taking this claim.  What -- well, you

14  filed suit before the Act became effective, isn't

15  that right?

16          **MR. WILDER:**  Correct.

17          **THE COURT:**  So how could -- what was the

18  taking and how could it have been a taking if before

19  the statute was effective?

20          **MR. WILDER:**  Because the language is so

21  clear that -- and it's been proven over the past two

22  years to have manifested itself that this is going

23  to effectively demolish many doctors' practices as

24  -- but what has happened is that the insurance

25  companies, now that they have this arbitration that

1  --

2          **THE COURT:**  Let me try to be more precise.

3  Is the thing that you are alleged was -- has been

4  taken --

5          **MR. WILDER:**  At the time --

6          **THE COURT:**  -- legal claims, common law

7  legal claims, or is it dollars?

8          **MR. WILDER:**  It's dollars is what it

9  amounts to. It's amounted to that as a result of --

10         **THE COURT:**  And -- and how do you -- how

11  do you articulate that injury?  What are you talking

12  about?

13         **MR. WILDER:**  As a result of the NSA, the

14  insurance companies are not willing to negotiate

15  anymore in in-network payment to doctors, and they

16  -- the doctors -- there's been a widespread

17  attrition of doctors practicing, which has harmed

18  the public, and there would also need to be more

19  time for it to develop.

20         The record hasn't been developed.  This is

21  a motion to dismiss.  The claim was made --

22         **THE COURT:**  Do you -- can I just -- I'm

23  sorry, can I just -- you're saying that the record

24  hasn't been developed.  I mean, that is a problem.

25  You're asserting an injury, but there's no support

1 for that injury in your -- in your filings.  You're

2 saying, well --

3          **MR. WILDER:**  What -- I understand what

4 you're saying.

5          **THE COURT:**  -- this is what we believe is

6 going to happen in the future.

7          **MR. WILDER:**  I would suggest if you have a

8 home which has been determined it's going to be

9 demolished and they are telling you they'll pay you

10 whatever they want, you -- you essentially already

11 have an injury even though the home hasn't been

12 demolished.

13          **THE COURT:**  But that's not -- that's

14 different.  That's very specific because if someone

15 says, we're going to demolish your home, okay.  This

16 -- what you're describing in terms of the effects of

17 this law are -- it seems very speculative.  It's

18 like, well, we think it's going to drive doctors out

19 of business, and we think this is going to happen,

20 and it's not going to really help the general public

21 --

22          **MR. WILDER:**  Well, we -- we see from the

23 language of the statute that there is a presumption

24 that the -- the insurance companies' QPA is correct.

25 And although it's similar language, it -- there's no

1  question that it was going to have a deleterious

2  effect on doctors, and I think the purpose was to

3  really -- was to take -- for that to happen, for

4  more money to be -- for doctors to share an

5  excessive amount of the money they make, which ends

6  up bringing them out of business.

7         And if the Courts are willing, I would

8  like to leave that argument for my brief and just go

9  back to that - - the prior argument, if that's okay.

10        **THE COURT:**  Why don't you wrap up.

11        **MR. WILDER:**  Okay.  I will.

12        **THE COURT:**  You'll have a few minutes for

13  rebuttal.

14        **MR. WILDER:**  Okay.  Thank you.

15        The -- the -- the law is very clear that

16  when you have -- all of the cases that were cited by

17  the Court -- and, again, this is not -- their

18  argument that it's forfeited doesn't work because

19  the -- the Court itself spent six pages talking

20  about this, "this" being the doctors be able to sue

21  insurance companies.

22        Northern Pipeline, Granfinanciera, Stern

23  versus Marshall, Murray's Lessee, all of these cases

24  and others that are cited in their cases and the

25  court case in the decision -- in the lower Court's

1  case, they all mandate that common law cases cannot

2  be taken into Article 1 forum, and for an Article 1

3  forum to be used to deposit a right, it has to be a

4  new public right created by congress.

5          When you have a standard common law case,

6  contract, tortious interference, that cannot be

7  simply put into -- taken by the Article 1 and put

8  into a case -- a forum for adjudication other than

9  the Article 3 and Seventh Amendment, a traditional

10  court.  And there was some discussion about, well,

11  if -- it's efficient.  It's efficient, and so forth

12  to use that -- the arbitration. Efficiency is not

13  the standard.  The Constitution -- constitutional

14  rights cannot be abrogated based on the notion that

15  it may be more efficient.

16          And I would like to add one more point,

17  that the -- the idea that, well, there's also

18  language, for example, that you can -- that this

19  exception -- the public rights is an exception to

20  Article 3.  It's not sort of the rule. It's an

21  exception.  That exception can happen when the --

22  what -- the forum is derived from legislation,

23  meaning it's a whole new right, where it's deemed

24  essential.  It's deemed essential to have this kind

25  of specialized Court with experts.

1           And I would suggest on the -- the cases

2   all suggest this would totally eviscerate Article 3.

3   Look at a medical malpractice case and how

4   complicated that is.  That's a lot more complicated

5   --

6           **THE COURT:**  Mr. Wilder, I think we have

7   your argument.  You've reserved a few minutes for

8   rebuttal.

9           **MR. WILDER:**  Okay.

10          **THE COURT:**  Thank you.

11          **MR. WILDER:**  Thank you.

12          **MS. CLARK:**  May it please the Court.

13  Sarah Clark for the United States.  I want to start

14  with Plaintiffs' argument, what I take to be

15  Plaintiffs' argument against their forfeiture.

16          So obviously, in District Court,

17  Plaintiffs expressly disclaimed any common law

18  claims against insurers, so that's at JA 174 and

19  175, their colloquy with the judge.  And they say

20  now that essentially they haven't forfeited because

21  the District Court addressed it.

22          But that's not right, right?  The District

23  Court took as its premise -- as one of its premises

24  Plaintiffs' concession and then went on to examine

25  the case based on the premises that it was litigated

1  below, which is that the Seventh Amendment claim was

2  based on Plaintiffs' asserted common law claims

3  against patients.

4         So the fact that the Court, you know, went

5  on to address this sort of Seventh Amendment

6  doctrine and sort of didn't sort of carve out the

7  insurer point doesn't mean that they addressed

8  whether there are common law claims against

9  insurers, and it doesn't detract from Plaintiffs'

10  concession below.  It's no argument for --

11         **THE COURT:**  It -- it arguably raises a

12  different problem, though, which is that the

13  District Court's analysis was resting on something

14  that was conceded that may or may not be correct as

15  a matter of law.  And are you asking us to affirm on

16  that basis just because it was a forfeited argument?

17         **MS. CLARK:**  So I --

18         **THE COURT:**  -- there may be a serious, you

19  know, Seventh Amendment argument here and to affirm

20  on the basis of a concession it may have been a

21  mistake seems problematic to me.

22         **MS. CLARK:**  No, Your Honor, it's not

23  problematic because the question is whether

24  Plaintiffs have stated a claim here, so this is not

25  an issue -- even a statutory interpretation where,

1  you know, we're asking the Court to go with one

2  reading because Plaintiffs didn't make a certain

3  argument.

4          They framed their entire Seventh Amendment

5  challenge, which, of course, is about common law

6  claims, based on the idea that they have claims

7  against patients. So there's no problem with

8  affirming the District Court's conclusion that, you

9  know --

10          **THE COURT:**  But the District Court's

11  entire public rights analysis rests on the absence

12  of a common law right against insurers.  So if

13  that's a mistake -- and -- and that was fairly

14  assumed by this Court in light of what happened

15  below, but if that's not right, then it seems

16  problematic to affirm.  I guess that's the concern

17  that I have with your position.

18          **MS. CLARK:**  I -- I disagree with that,

19  Your Honor, because, again, the claim that

20  Plaintiffs brought was premised on claims against

21  patients.  So it's not up to the District Court to

22  say, you know, what if you had brought a different

23  claim, one based on claims against insurers.  That

24  simply wasn't what was at issue.  And so if this

25  Court were to affirm the District Court here, it

1  wouldn't be, frankly, opining on whether there is or

2  is not a claim against --

3         **THE COURT:**  But the public rights

4  framework doesn't make sense if there is a claim of

5  common law against --

6         **MS. CLARK:**  Well, it made sense for the

7  District Court to discuss it because it was --

8         **THE COURT:**  I agree.  I'm not disputing

9  what the District Court did here in light of what

10  happened, but I'm concerned about what we should do

11  in light of the forfeiture that you're talking about

12  now.

13         **MS. CLARK:**  I guess I would just add it

14  additionally made sense for the District Court to

15  discuss it because the District Court was explaining

16  that, you know, Plaintiffs have brought this case

17  based on claims against patients.  The IDR system

18  doesn't adjudicate disputes between patients and

19  providers; therefore, there was no problem with the

20  IDR system under the Seventh Amendment or Article 3.

21         So -- so again, I would just reiterate

22  that it's -- it's not stating one way or the other

23  anything about this legal issue that Plaintiffs

24  conceded.  And you know, again, I -- Plaintiffs

25  haven't provided any reason for this Court to excuse

1  their forfeiture as we go outside of the traditional

2  rules of party presentation and, you know, address a

3  claim that they never brought in District Court.

4      **THE COURT:**  How about the argument raised

5  in the amicus brief, the brain surgeons, about the

6  -- whether the idea or process is compulsory or we

7  can avoid a Seventh Amendment problem by reading

8  "may" to be permissive?

9      **MS. CLARK:**  So --

10      **THE COURT:**  Again, another thing the

11  District Court didn't address because it wasn't

12  raised at the time.

13      **MS. CLARK:**  Right.  So of course, we don't

14  think this Court or the District Court would have

15  needed to address this question of whether the IDR

16  process is mandatory.  As we note in our brief, we

17  do think the best reading of the Act is that it is

18  mandatory.

19      One, you know, provision that -- so it

20  tells us that once a party has initiated IDR, it

21  directs at -- I apologize for the long cite --

22  300gg-111(c)(5)(b)(i), that the parties shall each

23  submit to the arbitrator an offer for our payment

24  amount.  So clearly, I think the Act contemplates

25  that both parties will participate.

 1          But, again, of course, just to take a step

 2  back, we don't think that the Court needs to reach

 3  that here, and of course, if -- I think if the Court

 4  viewed that as something necessary to address, the

 5  best course would be to remand to the District Court

 6  so it could actually address that issue in the first

 7  instance.  Of course, as you noted here, it's an odd

 8  -- Plaintiffs don't take the position that the

 9  amicus takes in this case either.

10          I'll just note one more point.  So

11  Plaintiffs have, I think, in this sort of vein of

12  forfeiture, said, you know, this is just a new

13  argument in support of the same claim, and,

14  therefore, we're not really in the world of

15  forfeiture.  And that's not right for the reason

16  that their entire premise of their claim has

17  changed.  So this isn't a question of statutory

18  interpretation, again, where, you know, they've

19  brought in a new dictionary definition or a new

20  structural argument.  They've fundamentally changed

21  the nature of their challenge here, so we're not in

22  the world of, you know, we thought of a new argument

23  in support of the same claim.

24          If the Court has no further questions,

25  we're happy to rest on our briefs and ask that the

 1  Court affirm.

 2          **THE COURT:**  Thank you, counsel.

 3          We'll hear rebuttal.

 4          **MR. WILDER:**  Thank you, Your Honor.  I

 5  almost feel as if I don't need to, but I will -- I

 6  would like to continue to -- the --

 7          **THE COURT:**  I'm sorry, let me just --

 8  before you get started on that, let me circle back

 9  to Judge Park's question about the takings claim.

10          It's now been almost exactly two years, I

11  think, since this complaint was filed.  Does Dr.

12  Haller now have a specific -- because Judge Lee was

13  trying to get you to say what is the dollar that was

14  lost here.  So your comments suggest that on a day-

15  to-day basis, Dr. Haller and others are losing --

16          **MR. WILDER:**  Yes.

17          **THE COURT:**  -- payments.  Has that

18  happened and -

19          -

20          **MR. WILDER:**  Yes.

21          **THE COURT:**  -- are -- is he -- is there a

22  new case now?

23          **MR. WILDER:**  Well, we can't bring that

24  case again now.  It's already been brought.  I don't

25  know how I could bring --

1          **THE COURT:**  Well, there'd be -- if there's

2   a specific taking, does Dr. Haller have some --

3          **MR. WILDER:**  Okay.  Yes.  I understand.  I

4   agree --

5          **THE COURT:**  -- where he says, I treated

6   Mr. --

7          **MR. WILDER:**  Yes.

8          **THE COURT:**  -- Jones, and --

9          **MR. WILDER:**  Yes.

10          **THE COURT:**  -- I -- I'm owed 10,000, and I

11   got 2,000, and that's a taking.

12          **MR. WILDER:**  Yes.  There is on a daily

13   basis hemorrhaging money.  They can't even afford

14   the overhead. And this is widespread among doctors.

15          **THE COURT:**  So -- but at no point while

16   this was under way, while this District Court action

17   was open, did Dr. Haller -- did the Plaintiffs move

18   to amend to --

19          **MR. WILDER:**  Yes.

20          **THE COURT:**  -- to add specific -- there's

21   a proposed amended complaint, but I'll go look for

22   it, but that says, here are the specific takings?

23          **MR. WILDER:**  I don' know if they did -- if

24   that happened with the law firm below, which -- but

25   I do know that they did move to amend, but I don't

1  know what the subject of the amendment was.

2          **THE COURT:**  Okay.  Thank you.

3          **MR. WILDER:**  Going back to -- or

4  specifically addressing what opposing counsel

5  stated, they said the claim was never brought.  "The

6  claim," meaning the claim that the doctors haven't

7  been able to -- or the doctors have a common law

8  right under Seventh Amendment to sue the insurers.

9  The claim was brought.  The claim is the violation

10 -- the Supreme Court cases, Yee and its progeny,

11 that it's -- the claim is the Seventh Amendment was

12 violated.

13          That there was an Article 3 violation and

14 a Seventh Amendment violation, that is the claim.

15 The argument is that the -- that they are being

16 denied -- the providers are being denied the ability

17 to sue insurers even though there's an extensive

18 body of common law which gave - - gives them just

19 that and on the exact same relief we have here,

20 which is unjust enrichment.  There are a plethora of

21 cases out there that provide that, and the Court

22 below does not recognize that at all, but she does.

23          And I'll also respond to opposing counsel.

24 She says that the Seventh Amendment discussion by

25 the Court below gets into the issue of suing



1  patients.  It doesn't. Ninety percent of what's in

2  that section -- and I will again -- and I would

3  respectfully direct the Courts to Joint Appendix,

4  page 56 to 61.  She discusses Seventh Amendment, and

5  almost every word of it is about why -- why the

6  doctors can't sue the insurers.  And that reason she

7  gives is there's no common law.  And then --

8          **THE COURT:**  I know you don't want to admit

9  forfeiture, but what's -- what would be wrong with

10  remanding and maybe with instructions for dismissal

11  without prejudice, and you can start over, because

12  your case has changed.  It started out as having to

13  do with claims about patients, and it was premature

14  as to takings as far as I can tell.  But if you

15  could start over, then maybe you can state the

16  arguments that you're stating now.  How -- how would

17  you feel about that?

18          **MR. WILDER:**  Well, I would prefer the

19  Court simply reverse, but if that were a course of

20  action the Court takes, I think that that would be

21  also a reasonable course of action.  If we were

22  actually to redraft -- if we're talking about

23  actually redrafting, I think that would be, you

24  know, quite suitable.

25          But just to continue briefly -- I don't

1  know if you want me to do this, but there -- the --

2  there's a lot of problems with the other side and

3  with some of what is said.  For example, that it's

4  more efficient to just go to these panels.  Again,

5  efficiency and the numerous of the cases quoted --

6  cited by everybody say that efficiency is not and

7  can never be a standard to circumvent Article 3 and

8  -- and just create these arbitration panels.  And

9  again, many of the cases say if -- even --

10        **THE COURT:**  I don't know about the policy,

11  you know, the pros and cons of efficiency of either

12  process, but I am interested and I've asked both

13  sides about whether it's compulsory or not, and

14  that's another thing --

15        **MR. WILDER:**  I believe, as they do, that

16  it is compulsory.  At least, it's compulsory if one

17  side or the other chooses it.  That's what the

18  language states.  If one party submits the

19  paperwork, then it is initiated, and that's it, and

20  the other party has an answer.

21        And I would just like to briefly -- you

22  stopped me before, so I don't know if you're

23  interested in this but --

24        **THE COURT:**  Why don't you wind up -- or

25  wind down.

1        **MR. WILDER:**  Okay.  I would like to --

2   okay.  Sure.  Thank you.

3        I would like to briefly address that if

4   this -- this paradigm were followed, it would

5   eviscerate Article 3 completely, and many of the

6   only -- some of these cases say that.  That is, if

7   you were to take something Article 1 creates a -- a

8   new right -- well, which is the public, but if it

9   somehow keeps borrowing from the common law and

10  sticking it into this new paradigm or into their

11  arbitration panels, saying, well, this is just a

12  little bit.  It will help a little bit.

13        If you keep doing that, you end up with no

14  more Article 3 because you could do that with a

15  medical malpractice case.  What could be more

16  complicated than chemistry and biology?  You can do

17  that with -- if a building collapses.  What could be

18  -- and when I say, "do that," a panel of, quote,

19  "experts."  Of -- where there's negligence by

20  engineers and other people, you can do this with so

21  many cases that you say, well, we need special

22  experts.  You don't need special experts to

23  determine the - - whether a fee paid to a doctor is

24  reasonable.

25        You have attorneys.  You have experts.

1   And then you have a jury to decide, and that's what

2   is the appropriate forum for this case.  And the

3   denial of that is a violation of the constitutional

4   right to the Seventh Amendment right for a jury and

5   Article 3.  Thank you, Your Honors.

6           **THE COURT:**  Thank you, counsel.  Thank

7   you, both.  We'll take the case under advisement.

8           **(WHEREUPON, the proceedings concluded.)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

```
1                          CERTIFICATE

2

3        I, Jodi Dean do hereby certify that the proceeding

4    named herein was professionally transcribed on the date

5    set forth in the certificate herein; that I transcribed

6    all testimony adduced and other oral proceedings had in

7    the foregoing matter; and that the foregoing transcript

8    pages constitute a full, true, and correct record of such

9    testimony adduced and oral proceeding had and of the

10   whole thereof.

11

12       IN WITNESS HEREOF, I have hereunto set my hand this

13   29th day of February, 2024.

14

15

16

17

18   _____

19                        Jodi Dean

20

21

22

23

24

25
```

**1**

**1** 11:22
  16:2 16:2
  16:7 28:7

**10,000** 24:10

**174** 17:18

**175** 17:19

**2**

**2,000** 24:11

**2024** 3:3

**22-3054** 3:5

**3**

**3** 3:3 7:18
  16:9 16:20
  17:2 20:20
  25:13 27:7
  28:5 28:14
  29:5

**300gg-111(c)**
  **(5)(b)(i**
  21:22

**30-day** 6:4
  6:24

**5**

**56** 8:25 9:5
  26:4

**6**

**61** 8:25 9:5
  26:4

**A**

**ability** 25:16

**able** 15:20
  25:7

**abrogated**
  16:14

**absence** 19:11

**abundance** 8:6

**Act** 3:14 3:17
  12:14
  21:17 21:24

**action**
  24:16
  26:20 26:21

**actually** 22:6
  26:22 26:23

**add** 16:16
  20:13 24:20

**addition**
  11:24

**additionally**
  20:14

**address**
  12:7 18:5
  21:2 21:11
  21:15 22:4
  22:6 28:3

**addressed**
  10:16 12:8
  17:21 18:7

**addressing**
  25:4

**adjudicate**
  20:18

**adjudication**
  16:8

**admit** 26:8

**advisement**
  29:7

**affirm** 18:15

  18:19
  19:16
  19:25 23:1

**affirming**
  19:8

**afford** 24:13

**afternoon** 3:8

**against** 17:15
  17:18 18:3
  18:8 19:7
  19:12
  19:20
  19:23 20:2
  20:5 20:17

**agreed** 4:15

**alleged** 13:3

**allowed** 11:16

**allowing**
  10:20

**already** 11:17
  14:10 23:24

**alternative**
  6:19

**am** 3:10
  10:4 27:12

**amend** 24:18
  24:25

**amended** 24:21

**amendment**
  4:23 7:16
  7:17 10:10
  10:14
  10:15 11:7
  16:9 18:1
  18:5 18:19
  19:4 20:20
  21:7 25:1
  25:8 25:11

  25:14
  25:24 26:4
  29:4

**amicus** 4:21
  21:5 22:9

**among** 24:14

**amount** 7:5
  15:5 21:24

**amounted** 13:9

**amounts** 13:9

**analysis**
  18:13 19:11

**answer** 8:18
  27:20

**anymore** 13:15

**anything**
  20:23

**apologize**
  21:21

**appeal** 7:14
  7:14 8:24

**appellant**
  5:19

**appellee** 5:19

**appellees**
  5:22

**appellee's**
  5:16

**Appendix** 8:25
  26:3

**appropriate**
  29:2

**arbitration**
  4:8 5:8
  7:4 7:15 9:1
  9:3 11:22

12:25
16:12 27:8
28:11

**arbitrator**
4:9 21:23

**arguably**
18:11

**argument** 9:15
10:11
10:13
10:16 12:4
15:8 15:9
15:18 17:7
17:14
17:15
18:10
18:16
18:19 19:3
21:4 22:13
22:20
22:22 25:15

**arguments**
10:1 10:4
12:2 26:16

**Article**
7:18 11:22
16:2 16:2
16:7 16:9
16:20 17:2
20:20
25:13 27:7
28:5 28:7
28:14 29:5

**articulate**
13:11

**aside** 8:13

**aspect** 9:15

**asserted** 18:2

**asserting**

13:25

**associates**
3:11

**associations**
4:22

**assumed** 19:14

**attorneys**
28:25

**attrition**
13:17

**averaged** 7:11

**avoid** 21:7

――――――――
B
**bad** 12:9

**based** 7:9
16:14
17:25 18:2
19:6 19:23
20:17

**basis** 18:16
18:20
23:15 24:13

**became** 12:14

**believe** 6:3
14:5 27:15

**best** 21:17
22:5

**better** 10:16

**bill** 3:25

**bills** 3:19

**biology** 28:16

**bit** 28:12
28:12

**board** 4:5 7:4

**body** 10:19

25:18

**borrowing**
28:9

**bound** 5:9

**brain** 4:22
21:5

**brief** 4:21
5:16 15:8
21:5 21:16

**briefly** 26:25
27:21 28:3

**briefs** 22:25

**bring** 7:17
23:23 23:25

**bringing**
4:6 4:7 15:6

**brought** 19:20
19:22
20:16 21:3
22:19
23:24 25:5
25:9

**building**
28:17

**business**
14:19 15:6

――――――――
C
**carve** 18:6

**case** 3:5 7:18
11:18
11:25
15:25 16:1
16:5 16:8
17:3 17:25
20:16 22:9
23:22 23:24

26:12
28:15 29:2
29:7

**cases** 8:4 9:9
9:11 9:24
10:1 10:22
11:1 11:9
11:15
11:16
11:20
15:16
15:23
15:24 16:1
17:1 25:10
25:21 27:5
27:9 28:6
28:21

**central** 7:13

**certain** 19:2

**challenge**
19:5 22:21

**challenging**
3:13

**change** 10:1
10:11

**changed** 10:13
22:17
22:20 26:12

**chemistry**
28:16

**choose** 5:6
5:7 5:7

**chooses**
6:23 27:17

**circle** 23:8

**circumvent**
27:7

**cite** 11:9

21:21

**cited** 15:16
15:24 27:6

**claim** 9:14
10:9 10:14
12:13
13:21 18:1
18:24
19:19
19:23 20:2
20:4 21:3
22:13
22:16
22:23 23:9
25:5 25:6
25:6 25:9
25:9 25:11
25:14

**claims** 13:6
13:7 17:18
18:2 18:8
19:6 19:6
19:20
19:23
20:17 26:13

**Clark** 17:12
17:13
18:17
18:22
19:18 20:6
20:13 21:9
21:13

**clear** 12:21
15:15

**clearly** 21:24

**client** 8:8

**clients** 5:10

**collapses**
28:17

**colloquy**
17:19

**combination**
7:10

**comments**
23:14

**common** 5:2
7:21 8:6
8:12 9:4 9:8
9:16 9:18
9:19 10:20
11:5 11:10
11:17
11:20 13:6
16:1 16:5
17:17 18:2
18:8 19:5
19:12 20:5
25:7 25:18
26:7 28:9

**companies** 4:7
7:7 9:12
10:20
12:25
13:14
14:24 15:21

**company** 3:21

**complaint**
23:11 24:21

**completely**
28:5

**complicated**
17:4 17:4
28:16

**compulsory**
5:1 21:6
27:13
27:16 27:16

**conceded** 8:11

9:19 18:14
20:24

**concern** 19:16

**concerned**
20:10

**concession**
17:24
18:10 18:20

**concluded**
29:8

**conclusion**
19:8

**congress** 16:4

**cons** 27:11

**consideration s** 7:3

**considered**
7:4

**Constitution**
16:13

**constitutiona l** 16:13 29:3

**constitutiona lity** 9:2

**contemplates**
21:24

**continue** 23:6
26:25

**contract** 16:6

**correct**
5:13 6:17
8:3 10:6
10:7 11:12
12:16
14:24 18:14

**correctly** 8:4

**costs** 3:24

**counsel** 8:9
8:17 8:18
8:22 23:2
25:4 25:23
29:6

**course** 7:16
19:5 21:13
22:1 22:3
22:5 22:7
26:19 26:21

**court** 3:5 3:9
4:11 4:17
4:21 5:10
5:14 5:18
5:21 5:23
6:1 6:8 6:10
6:14 7:19
7:20 7:23
7:25 8:1 8:4
8:5 8:7
8:7 8:11
8:12 8:16
8:19 8:22
8:25 9:4 9:7
9:14 9:25
10:3 10:8
10:17
10:18
10:21
10:25 11:2
11:5 11:9
11:13
11:18
11:19
12:11
12:17 13:2
13:6 13:10
13:22 14:5
14:13 15:10

15:12
15:17
15:19
15:25
16:10
16:25 17:6
17:10
17:12
17:16
17:21
17:23 18:4
18:11
18:18 19:1
19:10
19:14
19:21
19:25
19:25 20:3
20:7 20:8
20:9 20:14
20:15
20:25 21:3
21:4 21:10
21:11
21:14
21:14 22:2
22:3 22:5
22:24 23:1
23:2 23:7
23:17
23:21 24:1
24:5 24:8
24:10
24:15
24:16
24:20 25:2
25:10
25:21
25:25 26:8
26:19
26:20 27:10

27:24 29:6
**Courts** 15:7
   26:3
**Court's** 15:25
   18:13 19:8
   19:10
**cover** 3:23
   3:24
**covered** 4:2
**create** 27:8
**created** 16:4
**creates** 28:7

─────────
            D
**daily** 24:12
**day** 23:14
**decide** 4:10
   29:1
**decision** 12:9
   15:25
**decisions**
   12:10
**deemed**
   16:23 16:24
**defendant-**
   **appellants**
   4:14
**definition**
   22:19
**deleterious**
   15:1
**demolish**
   12:23 14:15
**demolished**
   14:9 14:12
**denial**

10:19 11:6
   29:3
**denied**
   25:16 25:16
**Department**
   3:6
**depends** 7:20
**deposit** 16:3
**derived** 16:22
**describing**
   14:16
**determine**
   28:23
**determined**
   7:6 7:7 14:8
**detract** 18:9
**develop** 13:19
**developed**
   13:20 13:24
**development**
   12:6
**devoted** 8:19
**dictionary**
   22:19
**different**
   7:10 8:8
   14:14
   18:12 19:22
**direct** 26:3
**directs** 21:21
**disagree**
   19:18
**disclaimed**
   17:17
**disclosed** 7:8

**discuss** 9:8
   20:7 20:15
**discussed**
   8:22
**discusses**
   26:4
**discussing**
   8:23 9:1 9:2
**discussion**
   16:10 25:24
**dismiss** 13:21
**dismissal**
   26:10
**disputes**
   20:18
**disputing**
   20:8
**District** 7:25
   17:16
   17:21
   17:22
   18:13 19:8
   19:10
   19:21
   19:25 20:7
   20:9 20:14
   20:15 21:3
   21:11
   21:14 22:5
   24:16
**doctor** 4:1
   28:23
**doctors** 4:7
   7:14 9:3
   9:10 9:12
   10:19
   12:23
   13:15 13:16

NAEGELI
DEPOSITION & TRIAL   CELEBRATING 40 YEARS IN BUSINESS   (800)528-3335
NAEGELIUSA.COM

13:17
14:18 15:2
15:4 15:20
24:14 25:6
25:7 26:6

**doctrine** 18:6

**dollar** 23:13

**dollars**
13:7 13:8

**don** 24:23

**Dr** 3:10 23:11
23:15 24:2
24:17

**drive** 14:18

**during** 4:8

————————
        E
**effect** 6:15
15:2

**effective**
12:14 12:19

**effectively**
12:23

**effects** 14:16

**efficiency**
16:12 27:5
27:6 27:11

**efficient**
16:11
16:11
16:15 27:4

**eight** 11:15

**either** 3:23
5:5 5:6 22:9
27:11

**elects** 6:20

**eliminate**

3:18

**emergency**
3:20

**enacted** 3:17

**engage** 6:6

**engineers**
28:20

**enrichment**
10:23 25:20

**entire** 19:4
19:11 22:16

**entirely** 7:6

**err** 8:7

**erred** 8:5

**Escandito**
9:24

**especially**
10:22

**essential**
16:24 16:24

**essentially**
3:17 4:13
4:16 14:10
17:20

**everybody**
27:6

**eviscerate**
17:2 28:5

**exact** 25:19

**exactly**
7:22 23:10

**examine** 17:24

**example**
3:20 10:10
16:18 27:3

**exception**

16:19
16:19
16:21 16:21

**excessive**
15:5

**excuse**
10:17 20:25

**expected** 3:24
4:2

**expecting**
3:20

**experts** 16:25
28:19
28:22
28:22 28:25

**explaining**
20:15

**expressly**
17:17

**extensive**
25:17

**extensively**
10:17

**extricate**
11:20

————————
        F
**fact** 5:5 12:5
18:4

**facts** 12:3
12:5

**fairly** 19:13

**federal** 10:21
11:15

**fee** 28:23

**feel** 23:5
26:17

**filed** 12:14
23:11

**filings** 14:1

**firm** 3:10
24:24

**first** 7:3 7:3
22:6

**focus** 9:18

**focused** 8:13

**forced** 7:15

**forfeited**
8:20 8:20
8:21 15:18
17:20 18:16

**forfeiture**
17:15
20:11 21:1
22:12
22:15 26:9

**forth** 6:25
16:11

**forum** 7:18
16:2 16:3
16:8 16:22
29:2

**framed** 11:6
19:4

**framework**
20:4

**frankly** 20:1

**front** 6:21

**fun** 3:16

**fundamentally**
22:20

**future** 14:6

————————
        G

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

general 14:20

generally
  12:1

gets 25:25

getting 7:1
  7:1

ghost 7:9

gives 4:9
  25:18 26:7

gone 3:19

Granfinanciera
  a 15:22

Great 3:12

grounds 7:8

guess 4:22
  12:12
  19:16 20:13

─────────────
          H
─────────────
Haller 3:5
  3:10 23:12
  23:15 24:2
  24:17

happen 14:6
  14:19 15:3
  16:21

happened
  12:24
  19:14
  20:10
  23:18 24:24

happy 22:25

harmed 13:17

haven't 17:20
  20:25 25:6

having 9:2

26:12

Health 3:6

hear 23:3

HELD 3:2

help 10:3
  14:20 28:12

hemorrhaging
  24:13

hey 6:4

hinged 9:15

home 14:8
  14:11 14:15

Honor 18:22
  19:19 23:4

Honors 3:8
  29:5

Human 3:6

─────────────
          I
─────────────
I'd 6:5 7:13

idea 16:17
  19:6 21:6

IDR 4:4
  4:11 20:17
  20:20
  21:15 21:20

I'll 22:10
  24:21 25:23

I'm 3:15 5:20
  6:8 11:4
  13:22 20:8
  20:10 23:7
  24:10

implication
  6:11

include 9:9

including
  10:21

Independent
  4:4

indicate 11:3

initiated
  6:22 21:20
  27:19

injury
  13:11
  13:25 14:1
  14:11

in-network
  13:15

innumerable
  9:9 9:11

input 11:21

instance 22:7

instructions
  26:10

insurance
  3:21 3:23
  4:7 7:6 9:12
  10:20
  12:24
  13:14
  14:24 15:21

insurer 18:7

insurers 9:20
  11:11
  17:18 18:9
  19:12
  19:23 25:8
  25:17 26:6

interested
  27:12 27:23

interference

16:6

interpretatio
  n 18:25
  22:18

involve 11:13

isn't 12:14
  22:17

issue 4:5 9:1
  18:25
  19:24
  20:23 22:6
  25:25

issues 9:6

I've 27:12

─────────────
          J
─────────────
JA 17:18

JANUARY 3:3

joint 8:24
  8:24 26:3

Jones 24:8

judge 17:19
  23:9 23:12

jury 7:18
  11:6 11:7
  11:13 29:1
  29:4

─────────────
          K
─────────────
kinds 3:15
  7:10

known 3:25
  4:3

─────────────
          L
─────────────
lack 9:19

language 4:15

6:18 6:21
12:20
14:23
14:25
16:18 27:18
**law** 3:10
5:2 7:21 8:6
8:12 9:4 9:8
9:16 9:18
9:19 10:20
11:5 11:10
11:17
11:20
11:20
11:25 12:4
12:6 12:7
13:6 14:17
15:15 16:1
16:5 17:17
18:2 18:8
18:15 19:5
19:12 20:5
24:24 25:7
25:18 26:7
28:9
**lead** 12:9
**leads** 6:3
**least** 27:16
**leave** 12:7
15:8
**Lee** 23:12
**legal** 13:6
13:7 20:23
**legislation**
3:16 16:22
**Lessee** 15:23
**light** 19:14
20:9 20:11
**litigated**

17:25
**little**
28:12 28:12
**long** 10:1
10:9 21:21
**longer** 9:21
**losing** 23:15
**lost** 23:14
**lot** 17:4 27:2
**lower** 11:19
15:25

———————
M
———————
**malpractice**
17:3 28:15
**mandate** 16:1
**mandatory**
4:11 4:14
4:15 5:17
5:24 21:16
21:18
**manifested**
12:22
**Marshall**
15:23
**matter** 5:11
18:15
**matters**
12:3 12:6
**may** 3:9
4:25 5:3 5:6
5:6 16:15
17:12
18:14
18:14
18:18
18:20 21:8

**maybe** 26:10
26:15
**mean** 4:19
10:17
13:24 18:7
**meaning** 16:23
25:6
**means** 4:5
**medical**
3:21 17:3
28:15
**minutes** 15:12
17:7
**mistake** 18:21
19:13
**Mm-hmm** 8:10
**money** 15:4
15:5 24:13
**motion** 13:21
**move** 24:17
24:25
**Murray's**
15:23

———————
N
———————
**nature** 22:21
**necessary**
22:4
**Neck** 3:12
**negligence**
28:19
**negotiate**
13:14
**negotiation**
6:4 6:25
**network** 3:22

**new-fangled**
11:22
**Nick** 3:9
**Ninety** 26:1
**Northern**
15:22
**note** 21:16
22:10
**noted** 22:7
**notion** 16:14
**NSA** 9:10
13:13
**numerous** 27:5

———————
O
———————
**obviously**
17:16
**odd** 22:7
**offer** 21:23
**okay** 4:20
5:14 10:8
14:15 15:9
15:11
15:14 17:9
24:3 25:2
28:1 28:2
**open** 24:17
**opining** 20:1
**opposing** 25:4
25:23
**others**
15:24 23:15
**otherwise**
6:11 6:14
**outside** 21:1
**overhead**

24:14

**owed** 24:10

_____

P
_____

**page** 8:25
26:4

**pages** 8:19
8:23 8:25
10:18 15:19

**paid** 10:23
28:23

**panel** 28:18

**panels** 27:4
27:8 28:11

**paperwork**
27:19

**paradigm** 28:4
28:10

**Park's** 23:9

**participate**
21:25

**parties** 5:6
6:19 21:22
21:25

**party** 5:6 5:9
6:20 6:22
6:24 21:2
21:20
27:18 27:20

**past** 12:21

**patients** 3:19
4:6 8:14 9:5
9:8 9:10
9:17 9:19
18:3 19:7
19:21
20:17
20:18 26:1

**pay** 3:21 14:9

**payment** 7:5
13:15 21:23

**payments**
23:17

**people** 28:20

**percent** 26:1

**permissive**
4:24 21:8

**permit** 10:22

**Pipeline**
15:22

**pivotal** 12:9

**places** 4:25

**Plaintiffs**
17:14
17:15
17:17
17:24 18:2
18:9 18:24
19:2 19:20
20:16
20:23
20:24 22:8
22:11 24:17

**please** 3:9
17:12

**plethora** 9:24
25:20

**point** 6:12
6:23 7:13
16:16 18:7
22:10 24:15

**points** 4:25

**policy** 27:10

**position**

19:17 22:8

**practical**
5:11

**practice** 3:11

**practices**
12:23

**practicing**
13:17

**precise** 13:2

**preempt** 5:2

**preexisting**
7:21

**prefer** 12:2
26:18

**prejudice**
26:11

**premature**
26:13

**premise** 17:23
22:16

**premised**
19:20

**premises**
17:23 17:25

**presentation**
21:2

**presented** 9:7

**presumption**
14:23

**prior** 8:17
8:17 8:22
9:10 15:9

**problem**
4:23 13:24
18:12 19:7
20:19 21:7

**problematic**
18:21
18:23 19:16

**problems**
7:2 27:2

**procedures**
7:11

**proceeding**
9:21

**proceedings**
3:1 29:8

**process**
4:11 4:24
5:7 5:8 5:12
6:22 11:22
21:6 21:16
27:12

**progeny** 25:10

**proposed**
24:21

**pros** 27:11

**proven** 12:21

**provide** 25:21

**provided**
20:25

**providers**
20:19 25:16

**provides** 4:3

**provision**
21:19

**public**
13:18
14:20 16:4
16:19
19:11 20:3
28:8

**purportedly**

3:18

**purpose**
6:16 15:2

**pursuing** 9:14

_____
Q
_____

**QPA** 7:5 14:24

**Qualified** 7:5

**question**
4:6 4:18
4:19 9:23
12:12 15:1
18:23
21:15
22:17 23:9

**questionable**
7:8

**questions**
22:24

**quickly** 7:2

**quite** 26:24

**quote** 3:18
5:16 7:9
12:4 28:18

**quoted** 27:5

_____
R
_____

**raised** 21:4
21:12

**raises** 18:11

**rates** 7:9

**reach** 22:2

**reading**
9:17 19:2
21:7 21:17

**really** 6:15
14:20 15:3

22:14

**reason**
20:25
22:15 26:6

**reasonable**
26:21 28:24

**rebuttal**
15:13 17:8
23:3

**recognize**
25:22

**recognizing**
8:6

**record**
13:20 13:23

**redraft** 26:22

**redrafting**
26:23

**reiterate**
20:21

**relating**
11:10

**relief** 25:19

**remand** 22:5

**remanding**
26:10

**repeated**
10:12

**representing**
3:10

**required** 6:6

**reserved** 17:7

**Resolution**
4:4

**respectfully**
26:3

**respond**
6:24 25:23

**rest** 22:25

**resting** 18:13

**rests** 19:11

**result** 13:9
13:13

**reveal** 7:10

**reverse** 26:19

**reversed** 9:20

**rights** 5:2
11:7 16:14
16:19
19:11 20:3

**room** 3:20

**rule** 16:20

**rules** 21:2

**run** 12:11

_____
S
_____

**Sarah** 17:13

**secondly**
11:24

**section** 26:2

**seems** 14:17
18:21 19:15

**sense** 20:4
20:6 20:14

**serious** 18:18

**Services** 3:7

**seven** 11:15

**Seventh**
4:23 7:16
7:17 10:10
10:13
10:14 11:7

16:9 18:1
18:5 18:19
19:4 20:20
21:7 25:8
25:11
25:14
25:24 26:4
29:4

**several** 10:22

**share** 15:4

**shifted** 10:15

**shifting** 4:5

**sides** 27:13

**similar** 14:25

**simply** 4:9
16:7 19:24
26:19

**six** 8:19 8:23
8:25 10:18
15:19

**sketchy** 7:7

**solely** 9:18

**somehow** 28:9

**someone** 14:14

**sorry** 11:4
13:23 23:7

**sort** 6:11
16:20 18:5
18:6 18:6
22:11

**special** 28:21
28:22

**specialized**
16:25

**specific**
14:14
23:12 24:2

24:20 24:22

**specifically**
25:4

**speculative**
14:17

**spent** 8:19
8:23 8:25
15:19

**standard** 16:5
16:13 27:7

**start** 17:13
26:11 26:15

**started**
23:8 26:12

**state** 8:5
26:15

**stated** 8:4
18:24 25:5

**states** 3:6
9:25 17:13
27:18

**stating** 20:22
26:16

**statute**
4:18 6:3
6:11 6:14
12:19 14:23

**statutory**
12:7 18:25
22:17

**step** 22:1

**Stern** 15:22

**sticking**
28:10

**stopped** 27:22

**strong** 10:19

**structural**
22:20

**stuck** 5:11

**subject** 25:1

**submit** 21:23

**submits** 27:18

**successfully**
9:11 9:13

**sue** 6:5 9:5
9:8 9:16
9:18 9:20
10:20
11:10
15:20 25:8
25:17 26:6

**sued** 9:10
9:12

**suggest**
14:7 17:1
17:2 23:14

**suing** 25:25

**suit** 12:14

**suitable**
26:24

**support** 13:25
22:13 22:23

**Supreme**
9:25 25:10

**sure** 3:15
10:3 28:2

**surgeons** 4:22
21:5

**surgical** 3:11

**surprise** 3:19
4:1

**Surprises**

3:13 3:17

**system**
20:17 20:20

———————

T

**taking**
12:13
12:18
12:18 24:2
24:11

**takings**
23:9 24:22
26:14

**talking** 13:11
15:19
20:11 26:22

**terms** 3:24
14:16

**thank** 8:12
15:14
17:10
17:11 23:2
23:4 25:2
28:2 29:5
29:6 29:6

**thanks** 6:5

**there'd** 24:1

**therefore**
20:19 22:14

**there's**
4:23 6:18
10:24
13:16
13:25
14:25
16:17 19:7
24:1 24:20
25:17 26:7
27:2 28:19

**they'd** 10:23

**they'll**
4:10 14:9

**They're** 7:9

**they've** 22:18
22:20

**time's** 12:12

**to-day** 23:15

**tortious** 16:6

**totally** 17:2

**traditional**
16:9 21:1

**TRANSCRIPT**
3:1

**treated** 24:5

**treatment**
3:22

**trial** 7:19
11:6 11:7

**trials** 11:13

**try** 13:2

**trying** 23:13

———————

U

**unaddressed**
12:8

**underscore**
8:24

**understand**
8:8 8:15
9:23 10:5
14:3 24:3

**understanding**
8:9

**undisputed**
5:23

United 3:6
  9:25 17:13
unjust
  10:23 25:20
unquote 3:18

———————
        V
various 4:25
vein 22:11
versus 3:6
  9:1 9:23
  15:23
viewed 22:4
violated
  25:12
violates 7:17
violation
  7:15 10:11
  10:14
  10:15 25:9
  25:13
  25:14 29:3
virtue 5:5
voluntary
  4:12 4:24
  6:19

———————
        W
wasn't
  19:24 21:11
WEDNESDAY 3:3
We'll 23:3
  29:7
we're 14:15
  19:1 22:14
  22:21
  22:25 26:22

we've 9:20
  10:13 10:15
whatever
  5:2 14:10
WHEREUPON
  29:8
whether
  4:19 7:20
  9:16 18:8
  18:23 20:1
  21:6 21:15
  27:13 28:23
whole 16:23
widespread
  13:16 24:14
Wilder 3:8
  3:9 3:10
  4:13 4:20
  5:4 5:13
  5:15 5:20
  5:22 5:25
  6:7 6:9 6:13
  6:17 7:22
  7:24 8:3
  8:10 8:15
  8:17 9:6
  9:22 10:6
  10:9 11:1
  11:4 11:8
  11:12
  11:14
  12:16
  12:20 13:5
  13:8 13:13
  14:3 14:7
  14:22
  15:11
  15:14 17:6
  17:9 17:11
  23:4 23:16

  23:20
  23:23 24:3
  24:7 24:9
  24:12
  24:19
  24:23 25:3
  26:18
  27:15 28:1
willing 13:14
  15:7
wind 27:24
  27:25
wish 6:21
wondering 6:8
work 15:18
world 22:14
  22:22
wrap 15:10
wrong 26:9

———————
        Y
Yee 9:23
  25:10
York 10:21
  11:16 12:1
You'll 15:12
you've 3:15
  17:7

NAEGELI
DEPOSITION & TRIAL    CELEBRATING 40 YEARS IN BUSINESS    (800)528-3335
NAEGELIUSA.COM