22-3054
*Haller v. U.S. Dep't of Health & Hum. Servs.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

| | |
|---|---|
| 1 | At a stated term of the United States Court of Appeals for the Second Circuit, |
| 2 | held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of |
| 3 | New York, on the 23rd day of January, two thousand twenty-four. |
| 4 | |
| 5 | **PRESENT:** |
| 6 | **MICHAEL H. PARK,** |
| 7 | **EUNICE C. LEE,** |
| 8 | **SARAH A. L. MERRIAM,** |
| 9 | *Circuit Judges.* |
| 10 | ———————————————————————— |
| 11 | |
| 12 | **Daniel Haller and Long Island Surgical PLLC,** |
| 13 | |
| 14 | *Plaintiffs-Appellants*, |
| 15 | |
| 16 | **v.** 22-3054 |
| 17 | |
| 18 | **U.S. Department of Health and Human Services,** |
| 19 | **Xavier Becerra, in his official capacity as** |
| 20 | **Secretary of Health and Human Services, U.S.** |
| 21 | **Office of Personnel Management, Kiran Ahuja, in** |
| 22 | **her official capacity as Director of the U.S. Office** |
| 23 | **of Personnel Management, U.S. Department of** |
| 24 | **Labor, Julie Su, in her official capacity as Acting** |
| 25 | **Secretary of Labor, U.S. Department of the** |
| 26 | **Treasury, Janet Yellen, in her official capacity as** |
| 27 | **Secretary of the Treasury,** |
| 28 | |
| 29 | *Defendants-Appellees.** |
| 30 | ———————————————————— |

———————————————

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

**FOR PLAINTIFFS-APPELLANTS:**  Nick Wilder, The Wilder Law Firm, New York, NY.

**FOR DEFENDANTS-APPELLEES:**  Sarah J. Clark (Joshua M. Salzman, *on the brief*), U.S. Dep't of Justice, Washington, DC.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Donnelly, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART**, **VACATED IN PART**, and **REMANDED** for further proceedings consistent with this order.

Daniel Haller and his associates at Long Island Surgical PLLC are surgeons who challenge the constitutionality of the No Surprises Act.  Pub. L. No. 116-260 (2020) (codified at 42 U.S.C. § 300gg-111 et seq.) (the "Act").  Appellants argue that the Act exceeds Congress's authority to assign adjudicatory functions to non-Article III tribunals, violates their right to a jury trial under the Seventh Amendment, and effects an unconstitutional taking of payments they would otherwise receive from patients.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a district court's grant of a motion to dismiss de novo, accepting all factual allegations as true and drawing all inferences in favor of the plaintiff.  *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

A.    Article III and Seventh Amendment Claims

Appellants argued in the district court that Congress created no new public right when it enacted the No Surprises Act because the Act supplanted doctors' longstanding common-law

cause of action to sue *patients* for the reasonable value of emergency medical services.  *See* Joint App'x at 128-29 ("Plaintiffs' common law claims are against the recipient of the medical treatment, not the insurer.").[1]  Appellants did not argue that they had any particular right of action against *insurers*, and they expressly conceded before the district court that they had no such claims.

On appeal, Appellants assert for the first time that they may have held a cause of action against insurers before the No Surprises Act.  We decline to consider that argument for the first time on appeal.  But neither should Appellants be prejudiced if they wish to replead and to advance such claims before the district court at a later date.  *See United States v. Gomez*, 877 F.3d 76, 94-96 (2d Cir. 2017) (noting our discretion in handling forfeited arguments).  We thus affirm the judgment of the district court only insofar as it concludes that Appellants failed to state a claim under Article III or the Seventh Amendment based on their right to bring common-law actions against patients – a claim Appellants have abandoned on appeal.   To the extent the district court concluded that Appellants lacked a common-law cause of action against insurers, we vacate and remand with instructions to dismiss Appellants' Article III and Seventh Amendment claims without prejudice to allow Appellants to plead such a claim if they so choose.[2]

B.    Takings Clause Claims

We affirm the district court's judgment as to Appellants' takings claims.  The Takings Clause provides that "private property [shall not] be taken for public use, without just

---

[1] The district court correctly concluded that the existence of a common-law cause of action against *patients* did not render providers' right to recover against *insurers* a "private" right that might (or might not) have been supplanted by the No Surprises Act.

[2] We express no opinion as to whether providers had a common-law cause of action against insurers before the No Surprises Act or, if so, whether the Act replaced such a cause of action.

compensation." U.S. Const. amend. V. Our precedents recognize two types of takings: physical and regulatory. *See Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d. Cir. 2006). Only the regulatory variety is at issue here.

To determine whether "justice and fairness require that economic injuries caused by public action must be deemed a compensable taking," we employ an "ad hoc, factual" approach that considers "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984) (citation and quotation marks omitted); *Buffalo Tchrs. Fed'n*, 464 F.3d at 374, *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 83 (1980). Of course, not every alleged reduction in the value of property is sufficient to support a takings claim. *Andrus v. Allard*, 444 U.S. 51, 66 (1979). We have observed that "loss of future profits—unaccompanied by any physical property restriction—provides a slender reed upon which to rest a takings claim. Prediction of profitability is essentially a matter of reasoned speculation that courts are not especially competent to perform." *Id.* We thus ask, for example, whether a regulation will "*unreasonably* impair the value or use of [plaintiff's] property." *See PruneYard Shopping Ctr.*, 447 U.S. at 83 (emphasis added).

Appellants here fail to allege a regulatory taking. They argue that what was "taken" from them was "the reasonable calculation of future income stream." Appellant's Br. at 56. Such vague and speculative allegations of an unspecified diminution in future income are insufficient to state a claim under the Takings Clause. We thus affirm the judgment of the district court as to Appellants' takings claim.

\*   \*   \*

4

1       We have considered Appellants' remaining arguments and found them to be without merit.

2    For the foregoing reasons, the judgment of the district court is **AFFIRMED IN PART**,

3    **VACATED IN PART**, and **REMANDED** for further proceedings consistent with this order.

4

5                       FOR THE COURT:

6                       Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit